**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| TIMOTHY WEST, | ) CASE NO.  1:15-cv-00203 |
| | ) |
| Petitioner, | ) JUDGE SARA LIOI |
| | ) |
| v. | ) MAGISTRATE JUDGE VECCHIARELLI |
| | ) |
| WARDEN BRADSHAW, | ) |
| | ) **REPORT AND RECOMMENDATION** |
| Respondent. | ) |

This 28 U.S.C. § 2254 petition is before the magistrate judge pursuant to Local

Rule 72.2(b)(2).  Before the court is the petition of Timothy West ("West" or

"Petitioner"), for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254.  Petitioner

is in the custody of the Ohio Department of Rehabilitation and Correction pursuant to

journal entry of sentence in the case of *State of Ohio vs. West*, Case No.

CR-11-548609-B.  For the following reasons, the magistrate judge recommends that the

petition be DENIED.

## I.  Introduction

The state appellate court that affirmed Petitioner's conviction noted the following

facts:

[*P2]  In March 2011, Timothy and his brother, codefendant, Todd West,
were jointly charged with illegal manufacture of drugs or cultivation of
marijuana, drug trafficking, drug possession, and possession of criminal
tools. Each count contained several forfeiture specifications, including
forfeiture of automobiles, money, and real property.

[*P3]  Although initially requesting a separate trial from his brother,
Timothy withdrew that motion prior to the start of trial and a joint jury trial

commenced.  The facts adduced at trial were stated in this court's opinion in *State v. West*, 8th Dist. Nos. 97398 and 97899, 2012 Ohio 6138, ¶ 6-16:

> In September 2010, the Cleveland police began investigating Timothy and Todd. During the investigation, the police learned that the brothers owned the property located at 2341 Scranton Road, and that they had purchased the property for $110,000 cash in May 2010. The police also learned that each man owned a home in Westlake.
>
> The trial testimony revealed that there is a short driveway for the Scranton Road property that leads to a locked gate and chain link fence. A large commercial building is located inside the gated and fenced portion of the property. On November 3, 2010, Cleveland police conducted surveillance of the property. During the surveillance, the police observed a van, driven by Timothy, arrive at the property, followed shortly by the arrival of an Oldsmobile, driven by Todd. Upon their arrivals, each defendant drove his vehicle into the driveway, got out of his vehicle, unlocked the padlock, and opened the gate.  The defendants then got back into their vehicles, drove beyond the gate, then got out of their car again and closed and locked the gate.  Todd and Timothy then drove their vehicles to the garage bay doors, opened the garage doors, pulled their cars into the garage, and then closed the door.
>
> After Timothy and Todd left the property that day, the police walked the perimeter of the building and smelled a strong odor of marijuana. The police obtained a warrant to search the building; they also obtained warrants to search Timothy and Todd's homes.
>
> On the day of the searches, November 5, 2010, the officer who had surveilled the Scranton Road property two days earlier again conducted surveillance of the property.  The officer saw the same two vehicles from the November 3 surveillance arrive at the property separately, but very close in time, and again driven by Todd and Timothy.  Todd arrived first driving the Oldsmobile.  He went through the same motions as on November 3: stopped the car in the driveway, got out and unlocked the gate, got back into the car and drove past the gates, got out, closed and locked the gate, drove the car to the garage, opened the garage, drove in, and shut the garage door. Timothy arrived shortly after Todd, and went through the same motions from November 3 and that Todd had just gone through moments before.  During the officer's surveillance of the property, no other vehicles or persons arrived.  Eventually, Todd left the building and after seeing Todd drive the Oldsmobile out of the garage, the

2

officer contacted other officers to move in. Todd was detained when he got out of his car to unlock the gate.  The police informed Todd that they were there to execute a search warrant and informed him of his Miranda rights, which Todd indicated he understood.

An officer stayed outside the building with Todd while other law enforcement officials executed the search inside the building.  The officer asked Todd if there was any marijuana inside the building; Todd responded "lots."  Todd elaborated that there were "a lot, hundreds, maybe a thousand" marijuana plants in the building. When the police asked him how many plants were ready for harvest, Todd responded, "lots, you got us good."  When further asked where he kept his money, Todd replied "we haven't had a chance to sell anything yet, there is no money."

Meanwhile, the officers executing the search found the main door to the building was padlocked, as was the basement door.  The officers who searched the basement had to wear face masks because the odor of marijuana was so overwhelming. Timothy was found coming from an office area in the warehouse [that was connected to rooms containing marijuana plants and growing paraphernalia].

The police recovered hundreds of marijuana plants growing primarily in the basement and in one or two of the first floor rooms.  The plants weighed a total of approximately 55,000 grams.  The police also recovered numerous criminal tools, including "grow lights," ventilation systems, soil, chemicals, packaging material, plant stakes, plastic gallon-sized and sandwich-sized bags, and scales.

A gallon-sized plastic bag containing marijuana was recovered from the trunk of Todd's vehicle.  When asked by the police if the bag of marijuana was a pound, Todd said it was 170 grams.  A forensic scientist from the Cuyahoga County Regional Forensic Science Laboratory testified that the weight of the bag and contents was 173.5 grams.

The police recovered $280 from Timothy's person and an electric timer was found during a search of his van.  Papers and money were seized from Timothy and Todd's homes: $1,313 from Timothy's house, and $2,700 from Todd's house.

After Todd and Timothy had been together for about an hour, Todd denied talking to the police and making any statements.  Todd admitted that he owned the building and stated that he leased part of it to a man named Adam Flanik.

3

[*P4]  Additionally, the trial testimony revealed that Timothy did HV/AC work.  Timothy testified that he began renting the south side of the building, where the marijuana-grow operation was discovered, to a couple named Eddie and Maria Torres in July 2010. He stated that although he smelled marijuana on occasion, he thought someone was smoking it inside the building.  He further testified that Maria Torres was a florist and was going to plant some trees for him, so he picked up soil for her.  He denied any knowledge of the marijuana and maintained that he and Todd were there to pick up the November rent.

State v. West, 2013 Ohio App. LEXIS 65, 2013-Ohio-96 (Ohio Ct. App., Jan. 17, 2013).

## II.  State Court Proceedings

### A.    Trial Court Proceedings

On March 29, 2011, a Cuyahoga County grand jury indicted Petitioner on one count of Illegal Manufacture of Drugs or Cultivation of Marihuana in violation of Ohio Revised Code ("O.R.C.") § 2925.04(A); one count of Trafficking in violation of O.R.C. § 2925.03(A)(2); one count of Drug Possession in violation of O.R.C. § 2925.11(A); and, one count of Possessing Criminal Tools in violation of O.R.C. § 2923.24(A).  (Doc. No. 50-1, Exh. 1.)  All charges carried numerous forfeiture specifications.  (Id.)

Petitioner, represented by counsel, entered a plea of not guilty.  (Doc. No. 50-1, Exh. 2.)

On September 2, 2011, Petitioner filed a motion for separate trials.  (Doc. No. 50-1, Exh. 4.)  During a pre-trial hearing, Petitioner's trial counsel indicated that he had spoken with co-defendant's counsel as well as the Petitioner, and withdrew the motion for a separate trial.  (Doc. No. 50-3, Tr. 12-13.)

On September 12, 2011, Petitioner's brother and co-defendant, Todd West, filed a motion to suppress.  (Doc. No. 50-1, Exh. 3.)  Todd West moved to suppress: (1) "any

4

and all evidence obtained from search warrants obtained to permit thermal imaging 'fly-overs'" of his home, Petitioner's home, and the commercial building owned by him and Petitioner; and (2) "any and all oral (or written) statements obtained from Todd West in violation of his Fifth Amendment rights under the United States Constitution and under the provisions of the Ohio Constitution." (*Id*.)  Petitioner's counsel, at a hearing, indicated that he wished to join the co-defendant's motion to suppress.  (Doc. No. 50-3, Tr. 15-16.)  On September 13, 2011, the trial court held a suppression hearing (Doc. No. 50-3, Tr. 162-189), and denied the motion to suppress evidence and the co-defendant's statements.  (Doc. No. 50-3, Tr. 202.)

On September 16, 2011, a jury found Petitioner guilty as charged.[1]  (Doc. No. 50-1, Exh. 6.)  The trial court merged Petitioner's Trafficking and Drug Possession convictions for sentencing purposes and the State elected to have West sentenced on the Trafficking conviction.  (*Id*.)  Petitioner was sentenced to a mandatory eight years in prison for the Illegal Drug Manufacture/Cultivation conviction, a mandatory consecutive eight years in prison for the Trafficking conviction, and twelve concurrent months in prison for the Possession of Criminal Tools conviction, resulting in an aggregate sixteen year sentence.  (*Id*.)

Subsequently, the trial court scheduled a forfeiture hearing and the State filed a brief in support of forfeiture.  (Doc. No. 50-1, Exh. 7.)  On October 17, 2011, a third-party, Nicholas Kulon, filed a petition for a hearing pursuant O.R.C. § 2981.04.

---

[1]  Petitioner's trial counsel moved for an acquittal pursuant to Ohio Crim. R. 29 after the State rested, and renewed the motion after the defense rested.  (Doc. No. 50, Tr. 600-601, 759.)  Both were denied.  (*Id*.)

(Doc. No. 50-1, Exh. 8.)  On December 28, 2011, another third-party, Donnalee West, filed a petition to declare an interest in the property subject to forfeiture.  (Doc. No. 50-1, Exh. 10.)  Afterward, the State filed a motion to strike Ms. West's petition to declare an interest in the property as untimely.  (Doc. No. 50-1, Exh. 11.)  On January 13, 2012, the trial court issued a Final Order of Sentencing and Forfeiture.  (Doc. No. 50-1, Exh. 12.)  West's aggregate sixteen year prison term remained unchanged.  (*Id.*) Furthermore, the trial court found the forfeited property was not disproportionate to the seriousness of the offense, found Donnalee West had no interest in the property, and struck her petition from the record as untimely.  (*Id.*)  The trial court also determined that third-party Nicholas Kulon was a *bona fide* purchaser.[2]  (*Id.*)

## B.    Direct Appeal

On October 11, 2011, Petitioner filed a notice of appeal. (Doc. No. 50-1, Exh. 18.)  Through new counsel, Petitioner asserted the following assignments of error:

1.    The introduction of numerous statements of the co-defendant deprived the appellant his right to Confrontation and deprived him of his Due Process Right to a fair trial.

2.    The trial court erred by failing to sever the defendants for trial.

3.    The trial court erred by failing to find the convictions of cultivation and trafficking in drugs to constitute allied offenses pursuant to Ohio Revised Code § 2941.25.

4.    The trial court abused its discretion by sentencing the appellant to

---

[2]  The court ordered the forfeited property on Scranton Road to be transferred to Kulon and that proceeds from the sale be distributed to the City of Cleveland Law Enforcement Trust Fund and the Cuyahoga County Prosecutor's Law Enforcement Trust Fund.  (Doc. No. 50-1, Exh. 12.)  Kulon filed a motion to modify the forfeiture value, but later withdrew the motion. (Doc. No. 50-1, Exhs. 13 & 14.)  Ms. West also filed a motion to stay the forfeiture, which the trial court denied.  (Doc. No. 50-1, Exhs. 16 & 17.)

consecutive sentences without ordering the preparation of and considering a presentence report.

5. The multiple failures of defense counsel denied the appellant his right to the effective assistance of trial counsel.

6. The trial court erred when it ordered the forfeiture of cash and an automobile because the evidence failed to establish that the cash was associated with drug trafficking activities.

7. The trial court erred when it ordered the forfeiture of all property located at 2341 Scranton in Cleveland, Ohio.[3]

(Doc. No. 50-1, Exhs. 22 & 27.)

On January 17, 2013, the state appellate court affirmed in part and reversed in part. *West*, 2013-Ohio-96 at ¶46. The state appellate court reversed the trial court judgment "as to its forfeiture order of the $1,313 seized from Timothy West's Hedgewood residence … [and] … its sentence on both the trafficking in drugs and cultivation or manufacture convictions," and remanded "for merger of those counts and the State's election of which count to proceed with on resentencing."[4] *Id*.

On February 1, 2013, Petitioner, *pro se*, filed a Notice of Appeal with the Ohio Supreme Court. (Doc. No. 50-1, Exh. 33.) He raised the following propositions of law:

1. The introduction of numerous statements of the co-defendant deprived the appellant his right to confrontation and deprived him of his due process right to a fair trial.

2. The trial court erred by failing to sever the defendants for trial.

---

[3] Petitioner raised the seventh assignment of error in a supplemental brief. (Doc. No. 50-1, Exh. 27.)

[4] On January 28, 2013, Petitioner, *pro se*, filed a motion for reconsideration with the state appellate court pursuant to Ohio App. R. 26 (A), which was denied. (Doc. No. 50-1, Exhs. 30 & 32.)

    3.    The trial court abused its discretion by sentencing the appellant to consecutive sentences without ordering the preparation of and considering a presentence report.

    4.    The multiple failures of defense counsel denied the appellant his right to the effective assistance of counsel.

    5.    The trial court erred when it ordered the forfeiture of all property located at 2341 Scranton in Cleveland, Ohio.

(Doc. No. 50-1, Exh. 34.)

On May 8, 2013, the Supreme Court of Ohio declined to accept jurisdiction of the appeal pursuant to Ohio S. Ct. Prac. R. 7.08(B)(4).  (Doc. No. 50-1, Exh. 35.)

**C.    Rule 26(B) Application**

On April 11, 2013, Petitioner, *pro se*, filed a application to reopen his appeal pursuant to Ohio App. R. 26(B) arguing appellate counsel was ineffective for failing to raise the following assignments of error on appeal:

    1.    The trial court erred when it held the forfeiture hearing without jurisdiction since an appeal was pending when the hearing was held to dispose the property on Scranton Ave.

    2.    The trial court erred when it forfeited property owned by the appellant that is not listed in the Bill of Particulars, and Indictment.

    3.    The appellant was denied his due process right to a fair trial when the prosecution failed to disclose evidence favorable to an accused upon request.

    4.    The trial court erred, violating the Appellant's Fourth Amendment Right to suppress evidence and conduct a hearing, especially the thermal imaging flyovers and the actual searches since the warrants and evidentiary issues dehor the record.

    5.    Trial court erred or abused its discretion when it denied the appellant's motion to return property from his residence.

    6.    Trial counsel was ineffective when he failed to present an affidavit of indigence prior to sentencing to waive the fine, or, in the

8

alternative, impose a $15,000 fine when both counts are allied offenses and $7,500 is maximum amount allowed.

7.    [Insufficient evidence to support the conviction for manufacturing and trafficking marijuana.][5]

(Doc. No. 50-1, Exh. 51.)

On September 25, 2013, in a reasoned decision, the state appellate court denied the application to reopen after addressing the ineffective assistance of appellate counsel claims.[6]  *State v. West*, 2013 Ohio App. LEXIS 4396, 2013-Ohio-4185 (Ohio Ct. App., Sept. 25, 2013).

On November 1, 2013, Petitioner, *pro se*, filed an appeal with the Supreme Court of Ohio raising substantially the same assignments of error as in the court below.  (Doc. No. 50-2, Exhs. 56 & 57.)  On February 19, 2014, the Supreme Court of Ohio declined to accept jurisdiction of the appeal pursuant to Ohio S. Ct. Prac. R. 7.08(B)(4).  (Doc. No. 50-2, Exh. 61.)

**D.    Post-Conviction Petition**s

Prior to his Ohio App. R. 26(B) application, on May 3, 2012, West filed his first *pro se* petition to vacate or set aside judgment of conviction or sentence raising one claim:

---

[5]  The ninth page of Petitioner's application to reopen is missing from the record.  (Doc. No. 50-1, Exh. 51.)   However, the state appellate court's decision expressly notes that West's final argument challenged the sufficiency of the evidence supporting his marijuana cultivation and trafficking convictions.  *West*, 2013-Ohio-4185 at ¶23.

[6]  With respect to the sixth assignment of error contending counsel should have filed an affidavit of indigence, the state appellate court noted that "there is no prejudice.  By successfully arguing that the cultivation and trafficking offenses merged, appellate counsel obtained a *de novo* sentencing for Timothy.... [He] may pursue this matter at the new sentencing hearing."  *West,* 2013-Ohio-4185 at ¶21.

> The Conviction was obtained with Ineffective Assistance of Trial Counsel violating the Sixth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution.

(Doc. No. 50-1, Exh. 36.) On June 29, 2012, the trial court denied West's petition without a hearing. (Doc. No. 50-1, Exh. 39.) Petitioner appealed the decision, arguing the trial court abused its discretion. (Doc. No. 50-1, Exhs. 40 & 41.) On March 7, 2013, the state appellate court affirmed the decision, finding the trial court had "no obligation to grant appellant's motion to stay so that appellant could have additional time to acquire cognizable evidence to support his petition and simultaneously avoid the pitfalls of filing an untimely petition." (Doc. No. 50-1, Exh. 45.)

On July 6, 2012, West filed a "Motion with Leave Pursuant to O.R.C. § 2953.21(F) to Amend Original Petition to Vacate or Set Aside Judgment of Conviction or Sentence" attempting to raise the same claim raised in his original petition. (Doc. No. 50-1, Exh. 46.) On October 11, 2012, the trial court denied the motion. (Doc. No. 50-1, Exh. 50.) Respondent asserts that no appeal was ever taken from this decision. (Doc. No. 50 at p. 12.)

Over two years later, on October 23, 2014, Petitioner, *pro se*, filed a motion for leave to file a delayed motion for a new trial raising the following three arguments:

1. Petitioner was unavoidably prevented from discovering the new evidence within 120 days of the jury's verdict in this case.

2. Petitioner's delay was caused by prosecutor misconduct where the prosecutor and/or the prosecutor's witness, intentionally withheld the exculpatory evidence.

3. Failure of the prosecutor to correct false testimony of the detectives violates *Napue v. Illinois*.

(Doc. No. 50-2, Exh. 71.) On December 29, 2014, Petitioner filed a lengthier motion

10

that raised the same three bases for a new trial.  (Doc. No. 50-2, Exh. 74.)  The two

motions were denied separately on January 15, 2015 and January 23, 2015

respectively.  (Doc. No. 50-2, Exhs. 73 & 75.)

Petitioner, *pro se*, separately appealed both January 2015 decisions, and, upon

Petitioner's motion, the state appellate court consolidated the appeals.  (Doc. No. 50-2,

Exhs. 76-79.)  West raised the following claim on appeal: "the trial court erred, or in the

alternative, abused its discretion when it denied defendant's motion for leave to file a

delayed motion for new trial."  (Doc. No. 50-2, Exh. 80.)  The state appellate court found

that "the alleged newly discovered evidence cannot be said to be material to West's

guilt or innocence.  Therefore, the trial court was justified in summarily denying West's

motions for a new trial."  *State v. West*, 2015 Ohio App. LEXIS 3349, 2015-Ohio-3354

at ¶15 (Ohio Ct. App., Aug. 20, 2015).

West filed an appeal with the Supreme Court of Ohio, which was denied on

December 2, 2015.  (Doc. No. 50-2, Exhs. 84-86.)

**E.     Resentencing**

Meanwhile, on July 24, 2014, the trial court held a resentencing hearing pursuant

to the state appellate court's remand order.   (Doc. No. 50-8, Tr. 2-16.)  Petitioner was

represented by counsel.  (*Id*.)  The State elected to have Petitioner sentenced on the

trafficking conviction.  (*Id*. at Tr. 4-5.)  The trial court imposed a mandatory eight year

sentence with respect to the trafficking conviction, and a twelve month concurrent

sentence for possession of criminal tools.  (Doc. No. 50-2, Exh. 62.)  As the state

appellate court reversed a $1,313 forfeiture, the court ordered the State to credit

Petitioner that amount on his mandatory $7,500 (leaving a $6,187 fine).[7]  (*Id*.)

### III.  Proceedings in this Court

On January 30, 2015, Petitioner, *pro se*, filed his § 2254 petition.  (Doc. No. 1.)

He asserts the following grounds for relief:

**Ground One**: Ineffective assistance of trial counsel in violation of the 5th, 6th, and 14th Amendment's [sic] to U.S. Constitution.

***Supporting facts***: Trial counsel failed to Request separate trials, failed to object to state's introduction of co-defendant's statements made to police, and counsel's erroneous objection to prosecutor's proposed jury instructions to correct error.

**Ground Two**: Ineffective assistance of appellate counsel in violation of the 4th, 5th, 6th, and 14th Amendment's [sic] to U.S. Constitution.

***Supporting facts***: Appellate counsel failed to raise issues on direct appeal, that the state had violated *Brady*; failed to raise issues regarding the trial court's abuse of discretion when denying the motion to suppress without ordering a hearing, and failing to issue any findings of fact.

**Ground Three**: Ineffective assistance of appellate counsel in violation of the 4th, 5th, 6th, and 14th Amendment's [sic] to U.S. Constitution.

***Supporting facts***: Appellate counsel failed to raise an issue on direct appeal, that the state's evidence was insufficient to sustain a conviction for cultivation of marijuana and drug trafficking.

**Ground Four**: Ineffective assistance of appellate counsel in violation of the 4th, 5th, 6th, and 14th Amendment's [sic] to U.S. Constitution.

---

[7]  On August 27, 2014, Petitioner, through new counsel, filed a motion for leave to file a delayed appeal, which the state appellate court granted.  (Doc. No. 50-2, Exhs. 64 & 65.) Petitioner's sole assignment of error argued that he was deprived of his property without Due Process of law because the court refused to consider the fact that he was indigent when it imposed a mandatory fine as part of his sentence.  (Doc. No. 50-2, Exh. 68.)  The state appellate court vacated "the trial court's imposition of a mandatory fine [and] ... remanded for the limited purpose of a consideration by the trial court of the defendants' claim of indigency." *State v. West*, 2015 Ohio App. LEXIS 1969, 2015-Ohio-2039 (Ohio Ct. App., May 28, 2015). Upon remand and after a hearing, the trial court waived the mandatory fine.  (Doc. No. 50-2, Exh. 87.)

*Supporting facts*: Appellate counsel failed to raise an issue that, the trial court erred in it's [sic] forfeiture proceedings when forfeiting property owned by the petitioner that was not listed in the bill of particular's [sic], indictment, or rendered by a jury finding.

**Ground Five**: The trial court erred in ordering the forfeiture of the real property known as Permanent Parcel No: 004-10-005 and 004-10-006 in Cleveland Ohio and erred by ordering the forfeiture of property that the value was disproportional to the severity of the offense.

*Supporting facts*: The forfeiture was obtained when the trial court violated the petitioner's 14th Amendment right to due process triggering violation of petitioner's 4th, 5th, 6th, 8th, and 14th Amendment's [sic] right to the United States Constitution.

**Ground Six**: The defendant was denied his fourteenth amendment right to due process when the trial court abused its discretion when it denied the defendant's motion for leave to file a delayed motion for new trial.[8]

*Supporting facts*: In June of 2014, the petitioner discovered new exculpatory evidence that is material to this case.  This newly discovered evidence was and is overwhelming proof that the state prosecutor's [sic] and witnesses repeatedly committed prosecutor and witness misconduct against the petitioner before during and after his trial....

(Doc. Nos. 1, 40.)

## IV. Procedural Issues

**A.    Jurisdiction**

A state prisoner may file a § 2254 petition in "the district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him."  28 U.S.C. § 2241(d).  The Court of Common Pleas of Cuyahoga County, Ohio sentenced Petitioner.  (Doc. No 50, Exhs. 12, 62, 70.)  Cuyahoga County is within this Court's geographic jurisdiction.  *See*

---

[8]  On December 9, 2015, West filed a motion to amend his habeas corpus petition to add this additional claim, which the Court granted.  (Doc. Nos. 40, 47.)

28 U.S.C. § 115(a).  Accordingly, this Court has jurisdiction over Petitioner's § 2254 petition.

### V.  The Merits of Petitioner's Remaining Claims[9]

**A.  Standard of Review**

The Antiterrorism and Effective Death Penalty Act of 1996 ( "AEDPA") altered the standard of review that a federal court must apply when deciding whether to grant a writ of habeas corpus.  As amended, 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A writ of habeas corpus may issue only if the state court's decision is contrary to clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence.  *See Carey v. Musladin*, 549 U.S. 70 (2006); *Williams v. Taylor*, 529 U.S. 362, 379-90 (2000).  Law is "clearly established" only by holdings of the Supreme Court, not its dicta, and the law must be clearly established at the time of the petitioner's conviction.  *See Carey*, 549 U.S. at 74.

Courts must give independent meaning to the phrases "contrary to" and

---

[9]  Respondent concedes West's petition is timely.  (Doc. No. 50 at p. 21.)  Also, while the Answer/Return of Writ sets forth the standards for exhaustion, fair presentation, and procedural default, Respondent does not actually argue any of Petitioner's grounds for relief are barred from consideration.  (Doc. No. 50 at pp. 21-27.)

"unreasonable application of" in § 2254(d)(1):

> Section 2254(d)(1) defines two categories of cases in which
> a state prisoner may obtain federal habeas relief with
> respect to a claim adjudicated on the merits in state court.
> Under the statute, a federal court may grant a writ of habeas
> corpus if the relevant state-court decision was either (1)
> "*contrary to* . . . clearly established Federal law, as
> determined by the Supreme Court of the United States," or
> (2) "*involved an unreasonable application of* . . . clearly
> established Federal law, as determined by the Supreme
> Court of the United States."

*Williams*, 529 U.S. at 404-05 (emphasis added by the quoting court).  A decision is "contrary to" clearly established federal law if it reaches a conclusion opposite to that reached by Supreme Court holdings on a question of law or if it faces a set of facts materially indistinguishable from relevant Supreme Court precedent and still arrives at an opposite result.  *Id.* at 405-06.  A decision involves an unreasonable application of federal law only if the deciding court correctly identifies the legal principle at issue and unreasonably applies it to the facts of the case at hand.  *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003).  "In order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous.  The state court's application must have been objectively unreasonable."  *Id.* at 520-21 (internal citations and quotation marks omitted).

**B.**   **Grounds One through Three: Ineffective Assistance of Trial and Appellate Counsel**

In assessing claims of ineffective assistance of counsel, courts apply the familiar standard of *Strickland v. Washington*, 466 U.S. 668 (1984), which requires a petitioner

15

to demonstrate both that his counsel's performance was deficient, and that the allegedly ineffective assistance caused him prejudice*:*

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland*, 466 U.S. at 687. This standard applies "regardless of whether a [p]etitioner is claiming ineffective assistance of trial counsel or ineffective assistance of appellate counsel." *Whiting v. Burt*, 395 F.3d 602, 617 (6th Cir. 2005). To establish the prejudice component of the *Strickland* standard, a defendant must show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Lundgren v. Mitchell*, 440 F.3d 754, 799 (6th Cir. 2006) (citations omitted).

Where, as here, a state appellate court correctly identifies *Strickland* as the standard for assessing a petitioner's ineffective assistance claim, in order for the petitioner to receive habeas relief, the state court's ruling must be an *unreasonable* application of the *Strickland* standard. *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) ("The question is not whether a federal court believes the state court's determination under *Strickland* was incorrect but whether that determination was

unreasonable – a substantially higher threshold.") (internal quotation marks omitted). Because the performance and prejudice components of the *Strickland* test are mixed questions of law and fact, they are subject to *de novo* review by a habeas court.  *Carter v. Bell*, 218 F.3d 581, 591 (6th Cir. 2000).  Federal habeas courts, however, must also employ "a 'doubly deferential' standard of review that gives both the state court and the defense attorney the benefit of the doubt."  *Burt v. Titlow*, ___ U.S. ___, 134 S. Ct. 10, 13 (2013); *see also Cullen v. Pinholster*, 563 U.S. 170, 131 S. Ct. 1388 (2011) ("Our review of the [state court's] decision is thus doubly deferential.  We take a highly deferential look at counsel's performance through the deferential lens of § 2254(d).") (internal citations and quotation marks omitted).

### 1.  Ground One: Ineffective Assistance of Trial Counsel

In his first ground for relief, Petitioner asserts that trial counsel rendered ineffective assistance by: (1) failing to request a separate trial from his brother Todd who was a co-defendant; (2) failing to object to the introduction of statements made by Todd during his arrest; and, (3) objecting to the State's proposed jury instruction that Todd's statements could not be used against Petitioner.  (Doc. No. 1 at pp. 7-21.)  Though West separates these three instances into distinct failures, they all revolve around the same issue – the impact of the out-of-court statements made by co-defendant Todd West on Petitioner's trial.  As such, the Court addresses them together.

In *Bruton v. United States*, 391 U.S. 123, 126 (1968), the Supreme Court held that admission of a co-defendant's confession violated the Sixth Amendment's Confrontation Clause even where limiting jury instructions were given, as there was a

substantial risk that the jury, despite instructions to the contrary, would look to the incriminating extrajudicial statements in determining petitioner's guilt.  In applying the principle of *Bruton*, the Sixth Circuit has found that "where a *Bruton* situation exists, the court may protect the non-confessing defendant's Sixth Amendment rights by 1) exclusion of the confession, 2) severance of the trial, or 3) redaction of the confession to avoid mention or obvious implication of the non-confessing defendant."  *Stanford v. Parker*, 266 F.3d 442, 456 (6th Cir. 2001) (*citing Richardson v. Marsh*, 481 U.S. 200, 209 (1987)).  It does not appear that any of these three steps were taken.  Nevertheless, a *Bruton* violation does not necessarily entitle a petitioner to habeas relief.

> Where a *Bruton* violation occurs, a court must then determine whether that violation is harmless.  The court must decide "whether the 'minds of an average jury'" would have found the State's case against a defendant "'significantly less persuasive'" had the incriminating portion of the co-defendant's statement been excluded. *Hodges [v. Rose]*, 570 F.2d at 648 (quoting *Schneble v. Florida*, 405 U.S. 427, 432, 92 S. Ct. 1056, 31 L. Ed. 2d 340 (1972)).  Relief may be granted on collateral review only if the trial error "had substantial and injurious effect or influence in determining the jury's verdict.  Under this standard, habeas petitioners … are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'" *Brecht v. Abrahamson*, 507 U.S. 619, 637, 123 L. Ed. 2d 353, 113 S. Ct. 1710 (1993) (internal quotation and citation omitted).  An erroneous admission of a non-testifying co-defendant's confession can constitute harmless error where the defendant claiming a *Bruton* violation confessed to full participation in the crimes.  *See Cruz v. New York*, 481 U.S. 186, 194, 95 L. Ed. 2d 162, 107 S. Ct. 1714 (1987); *Gilliam v. Mitchell*, 179 F.3d 990, 995 (6th Cir. 1999).

*Stanford*, 266 F.3d at 456.

Here, the state appellate court correctly identified the *Strickland* standard as governing ineffective assistance of counsel claims and *Bruton* as controlling case law

concerning the testimonial statements of co-defendants.  *West*, 2013-Ohio-96 at ¶¶9-

11, 24.  The court proceeded to conduct a "harmless beyond doubt" analysis based on

*State v. Moritz*, 63 Ohio St.2d 150, 407 N.E.2d 1268 (Ohio 1980).[10]  It concluded that

any violation of *Bruton* was harmless:

> {¶ 12}  In this case, the State concedes on appeal that the statements
> made by Todd were testimonial and were subject to *Crawford* if used
> against Timothy.  However, the State maintains that Timothy was not
> prejudiced by the statements; thus, any error in the admission of the
> statements was harmless.  We agree.

> {¶ 13}  While the extrajudicial statements made by Todd may have
> implicated Timothy, the evidence was sufficient beyond these statements
> to render them harmless.  The evidence presented at trial showed that on
> two different occasions, Timothy was observed making purchases from
> two different stores described as "grow houses."  On the day the search
> warrant was executed, Timothy was observed entering the store Cheap
> Hydroponics and loading large bags of soil into his van – similar looking
> bags were recovered when the search warrant was executed at the
> Scranton Road property.

> {¶ 14}  When Timothy was arrested at the Scranton Road property, he
> was apprehended as he was exiting an office area of the warehouse that
> was connected to other rooms where marijuana plants were growing and
> harvesting and growing paraphernalia was located.  Also located and
> recovered from those rooms included packaging material, scales, bags,
> cutting shears, and loose marijuana, stems, and leaves littered the floor.
> Moreover, the officers testified that when they searched the basement
> area of the warehouse, they had to wear masks because the odor of
> marijuana was so overwhelming.  Considering the strong odor of
> marijuana, the debris, plants, and paraphernalia recovered, and that
> Timothy was apprehended when he was exiting an area where all the
> contraband was located, sufficient admissible evidence was present to
> render the extrajudicial statements made by Todd harmless beyond a
> reasonable doubt.

---

[10]  The holding in *State v. Moritz* is based on federal law, specifically *Bruton* and
*Harrington v. California*, 395 U.S. 250, 254 (1969) ("[T]he case against Harrington was so
overwhelming that we conclude that this violation of *Bruton* was harmless beyond a reasonable
doubt.")

*West*, 2013-Ohio-96 at ¶¶12-14.

In addition, Petitioner, along with his brother, owned the Scranton Road property where marijuana was found, the brothers had been observed entering the property surreptitiously on two occasions, and a strong odor of marijuana could be smelled by police officers even after the West brothers' first observed visit.  *West*, 2013-Ohio-96 at ¶3.  The state appellate court reasonably applied clearly established federal law by finding that the alleged *Bruton* violation was harmless given the substantial evidence supporting Petitioner's convictions.

Petitioner also takes issue with his trial counsel's objection to a proposed jury instruction that would have limited the consideration of co-defendant's statements to the case against co-defendant Todd West.  (Doc. No. 1 at pp. 13-15.)  This argument, while mentioned in West's brief on direct appeal, was not a separate argument but part and parcel of Petitioner's first assignment of error – that his right to confrontation was violated under *Bruto*n.  (Doc. No. 50-1, Exh. 22 at pp. 9-10.)  The state court did not separately address this issue, but its failure to do so was immaterial.  In *Bruton*, the Supreme Court held that even though the trial court gave clear limiting instructions that a co-defendant's confession could only be used against co-defendant and must be disregarded with respect to defendant, a violation had still occurred.  391 U.S. 123. The state appellate court, however, already assumed that a *Bruton* violation occurred when it engaged in a harmless error analysis.  As it determined that there was overwhelming evidence of guilt, counsel's failure to object was immaterial.

Petitioner did separately argue that trial counsel erred by failing to follow through

20

on his attempt to sever his trial from his brother and co-defendant and also by failing to object to the introduction of co-defendant's out-of-court statements.[11]  (Doc. No. 50-1, Exh. 22 at pp. 12-14, 21.)  Notably, West's trial counsel did, in fact, initially request a separate trial from West's brother and co-Defendant.  (Doc. No. 50-1, Exh. 4.)  During a court hearing, and in the presence of Petitioner, West's counsel indicated that he had reviewed the entire file, spoken to the co-defendant's counsel, and "to [his] client, and it would be our position to withdraw [the] motion [for separate trials] at this time."  (Doc. No. 50-3, Tr. 12-13.)  Petitioner's counsel also joined a pre-trial motion to suppress the statements made by Todd West at the time of his arrest – the court conducted a hearing and denied the motion.  (Doc. No. 50-1, Exh. 3; Doc. No. 50-3, Tr. 15-16, 162-189, 202.)  With respect to the severance issue, the state appellate court found as follows:

> [*P16]  In his second assignment of error, Timothy contends the trial court erred by failing to sever the defendants for trial.  The record reflects that Timothy initially moved the court for separate trials; however and after conferring with counsel and Todd's counsel, a tactical decision was made to try the cases together.  Accordingly, we find that when he withdrew his motion for separate trials, Timothy invited the error now complained of on appeal.  Under the invited error doctrine, "a party is not entitled to take advantage of an error that he himself invited or induced."  *State v. Doss*, 8th Dist. No. 84433, 2005 Ohio 775, ¶5, quoting *State ex rel. Kline v. Carroll*, 96 Ohio St.3d 404, 2002 Ohio 4849, 775 N.E.2d 517.  A defendant "'may not make an affirmative and apparent strategic decision at trial and then complain on appeal that the result of that decision constitutes reversible error.'"  *Doss* at ¶ 7, quoting *United States v. Jernigan*, 341 F.3d 1273, 1290 (7th Cir. 2003).

*West*, 2013-Ohio-96 at ¶16.

---

[11]  Given the state appellate court's reasonable finding that the admission of out-of-court statements was harmless error, Petitioner cannot show that his counsel's failure to object to these statements affected the outcome of his case.

21

As stated above, the hearing transcript reflects that Petitioner's trial counsel, after conferring with Petitioner, revoked the request for separate trials and any ensuing error was invited by Petitioner and his counsel.  Under Ohio's "invited error doctrine," a defendant "will not be permitted to take advantage of an error that he himself invited or induced the trial court to make." *State ex rel. The V Cos. v. Marchall*, 692 N.E.2d 198, 202, 81 Ohio St.3d 467, 471 (Ohio 1998).  Invited error occurs when defense counsel "was actively responsible for the trial court's error" or "when a party has asked the court to take some action later claimed to be erroneous." *State v. Campbell*, 738 N.E.2d 1178, 1188, 90 Ohio St.3d 320, 324 (Ohio 2000).  Furthermore, Petitioner, co-defendant's counsel, and his own counsel all appear to have made a strategic decision to proceed to a joint trial.  Co-defendant Todd West did not testify and, therefore, he could not be cross-examined regarding his out-of-court statements.  Conversely, Petitioner did testify, and he denied that his brother had made the contested statements.  (Doc. No. 50-5, Tr. 736-740.)  In fact, Petitioner testified that police detectives had manufactured the statements they attributed to co-defendant Todd West and emphasized what he believed to be the incoherence of the statement attributed to his brother.[12]  (*Id*.)  In hindsight, Petitioner now appears to regret his decision not to pursue a separate trial from his brother.  However, habeas relief is not available for trial counsel's unsuccessful strategic decisions, especially where the decision was made

---

[12]  Petitioner's testimony took issue with his brother's alleged statement that the building contained two to three hundred or a thousand plants.  (Doc. No. 50-5, Tr. 739-40.)  He mused that if his brother was growing the marijuana, surely he would know how many plants were there and the range given was so preposterously large that it suggested fabrication by the police.  (*Id*.)

22

with the defendant's express consent.

Petitioner's ineffective assistance of trial counsel claims are not well taken.

### 2. Grounds Two and Three: Ineffective Assistance of Appellate Counsel

In his second and third grounds for relief, Petitioner asserts that appellate counsel was ineffective for failing to raise the following arguments on direct appeal: (1) an alleged *Brady* violation by the State;[13] (2) a challenge to the court's denial of the motion to suppress without a hearing and a failure to issue findings of fact or conclusions of law in connection with the denial; and (3) insufficiency of the evidence supporting his trafficking and marijuana cultivation convictions. (Doc. No. 1 at pp, 22-33.)

As stated above, the *Strickland* standard governing ineffective assistance of counsel claims applies to ineffective assistance of appellate counsel claims as well. However, an appellant has no constitutional right to have every non-frivolous issue raised on appeal. *See, e.g., Jones v. Barnes*, 463 U.S. 745, 750-52 (1983) ("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues.") Tactical choices concerning which issues to raise on appeal are "properly left to the sound professional judgment of counsel..." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). "[O]nly when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of

---

[13] The alleged *Brady* material that West believes was favorable to him was the affidavit and search warrant for the fly-over thermal imaging performed on the Scranton Road property. (Doc. No. 50-1, Exh. 51 at pp. 4-6.)

[appellate] counsel be overcome."  *Joshua v. DeWitt*, 341 F.3d 430, 441 (6th Cir. 2003) (internal quotation marks and citations omitted).

The state appellate court again identified the correct standard governing ineffective assistance of counsel claims.  *West*, 2013-Ohio-4185 at ¶¶6-10.  It proceeded to address Petitioner's assignments of error as follows:

> [*P13]  West's third and fourth arguments concern the fly-over thermal imaging search, which he submits was used in the supporting affidavit for the search warrants executed on November 10, 2010.  Apparently, based on the police's investigation, including the brothers' careful actions at the Scranton Road property and the smell of marijuana emanating from the property, the police obtained a warrant to conduct a fly-over thermal imaging search of the building.  The police supported their affidavit for the search warrant of the Scranton Road property, inter alia, with the results from thermal imaging.
>
> [*P14]  Before trial, Todd West moved to suppress the search warrants and their fruits because the affidavits did not provide cause for the warrants.  Timothy orally joined in this motion during court proceedings. The trial judge took the affidavits and the search warrants to review them. Subsequently, the judge denied the motion to suppress, but did not hold a hearing on the motion to suppress or issue findings of fact and conclusions of law.  Moreover, the supporting affidavit for the fly-over search does not appear to be in the record.
>
> [*P15]  Timothy West first argues that by not disclosing the affidavit for the fly-over search, the prosecutor violated his duty to disclose exculpatory material.  West then continues that because the fly-over affidavit was improper and used to obtain the building search warrant, that  search warrant must also be improper, and all fruits of the search warrants must be suppressed.  In his second argument, West argues that the trial court erred in failing to conduct a hearing because the supporting affidavit was not in the record.  West relies upon *State v. Roberts*, 62 Ohio St.2d 170, 405 N.E.2d 247 (1980), and *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), which require the court to hold a hearing when there is an allegation of deliberate falsehood or reckless disregard of the truth.
>
> [*P16]  These arguments are unpersuasive.  First, there is a lack of record support.  The affidavits and search warrants were not in the record and would not provide a foundation for any argument, especially one claiming

24

that there was exculpatory material or deliberate falsehood.  Furthermore, the reference to the fly-over search in the record made by Timothy's attorney indicates the results were merely inconclusive.  (Tr. 188.)  Under *Franks* and *Roberts*, to obtain a hearing on the affidavit, the defendant must make a substantial showing of a falsehood intentionally and knowingly used or in reckless disregard of the truth.  In the present case, Timothy made no such showing.  Furthermore, there is no prejudice; this court considered and rejected these arguments.  In *State v. West*, 8th Dist. Cuyahoga Nos. 97398 and 97899, 2012-Ohio-6138, Todd West argued that the trial court erred in failing to hold an evidentiary hearing and make findings on the motion to suppress the evidence obtained during the thermal imaging flyovers and actual searches.  This court overruled the assignment on the grounds that West did not provide a complete record and waived his right to challenge the trial judge's ruling by failing to request findings.  More importantly, the evidence of the brothers' surreptitious movements and the strong smell of marijuana provided sufficient probable cause for the search.

\* \* \*

[\*P19]  This court notes that Timothy's appellate counsel argued seven assignments of error, successfully identified three errors and obtained substantial relief for his client, reducing his sentence and retrieving $1,313. This court further notes that the motion to return property is an ancillary matter, unrelated to the evidence, the conviction, and the sentence.

[\*P20]  In weighing these factors  — the lack of record support, the multiple issues presented, the success of counsel in discerning arguments, and the ancillary nature of the motion — this court will follow the admonition of the supreme courts and conclude that appellate counsel in the exercise of professional judgment could decline to argue this point and, thus, was not ineffective.

\* \* \*

[\*P23]  Finally, Timothy argues that there was insufficient evidence to support the convictions for cultivation and trafficking.  This court implicitly rejected this argument in addressing the admissibility of Todd's incriminating statements against Timothy.  This court reviewed the evidence against Timothy and ruled that "sufficient admissible evidence was present to render the extrajudicial statements made by Todd harmless beyond a reasonable doubt."  *West*, 2013-Ohio-96, ¶14.

*West*, 2013-Ohio-4185 at ¶¶13-16, 19-20, 23 (footnotes omitted).

25

The Court finds the state appellate court's decision was neither contrary to nor an unreasonable application of clearly established federal law.  First, the court found that counsel had exercised reasonable professional judgment by winnowing out weaker arguments for stronger ones, specifically noting that appellate counsel achieved a significant reduction in West's sentence.  Furthermore, even were the Court to assume for the sake of argument that counsel's actions were deficient, the state court found that the underlying arguments themselves were meritless and, therefore, appellate counsel was not deficient for failing to raise them.  Because Petitioner must demonstrate a reasonable likelihood that the outcome of his appeal would have been different, the state court's determination  – that the assignments of error that West believes should have been raised would not have been successful – renders Petitioner unable to demonstrate the requisite prejudice under *Strickland*.

As such, Petitioner's ineffective assistance of appellate counsel claims in grounds two and three should be denied as meritless.

### 3.    Ground Four:  Ineffective Assistance of Appellate Counsel Related to Forfeiture

In his fourth ground for relief, Petitioner raised an additional argument related to appellate counsel's alleged ineffectiveness.  The Court construes Petitioner's argument as one suggesting that appellate counsel was ineffective for failing to raise the forfeiture arguments contained in ground five on direct appeal.  (Doc. No. 1 at p. 5.)

A claim of ineffective assistance of appellate counsel for failure to raise specific arguments related to the forfeiture proceedings does not present a cognizable claim for habeas review.  As explained by another district court within the Sixth Circuit:

Importantly, counsel's alleged ineffectiveness in the forfeiture proceeding does not itself provide a basis for an ineffective assistance of counsel claim. As the Supreme Court has explained, "[t]he protections provided by the Sixth Amendment are explicitly confined to 'criminal prosecutions.'" *Austin v. United States*, 509 U.S. 602, 608, 113 S. Ct. 2801, 125 L. Ed. 2d 488 (1993). The Supreme Court has also held that the Sixth Amendment right to counsel is limited to those criminal proceedings which contain a risk of loss of liberty. *See Scott v. Illinois*, 440 U.S. 367, 373, 99 S. Ct. 1158, 59 L. Ed. 2d 383 (1979).  Because a forfeiture proceeding is not a "criminal prosecution" and is not attended by a risk of the loss of liberty, the courts have uniformly held there is no right to counsel in a forfeiture proceeding.  *See, e.g., United States v. Saccoccia*, 564 F.3d 502, 505 (1st Cir. 2009); *United States v. 87 Blackheath Rd.*, 201 F.3d 98, 99 (2d Cir. 2000); *United States v. $ 100,375.00 in U.S. Currency*, 70 F.3d 438, 440 (6th Cir. 1995); *United States v. $ 292,888.04 in U.S. Currency*, 54 F.3d 564, 569 (9th Cir. 1995); *United States v. 7108 West Grand Ave., Chicago, Ill.*, 15 F.3d 632, 635 (7th Cir. 1994). And where there is no Sixth Amendment right to counsel, there can be no corollary right to the effective assistance of counsel.  *See Wainwright v. Torna*, 455 U.S. 586, 587-88, 102 S. Ct. 1300, 71 L. Ed. 2d 475 (1982) (*per curiam*).

*Brown v. Berghuis*, 638 F. Supp. 2d 795, 824, 2009 U.S. Dist. LEXIS 67446 (E.D. Mich. Jul. 10, 2009), *adopted by*, 638 F. Supp. 2d 795, 2009 U.S. Dist. LEXIS 65356 ( E.D. Mich., Jul. 29, 2009).

As counsel's alleged ineffectiveness during forfeiture proceedings does not provide a basis for an ineffective assistance of counsel on habeas review, appellate counsel's failure to raise arguments related to the forfeiture proceedings cannot support a cognizable claim.  Nevertheless, assuming *arguendo* that such a claim is cognizable, Petitioner would be unable to show any prejudice under the governing *Strickland* standard identified above.  When addressing Petitioner's Ohio App. R. 26(B) application, the state appellate court found that Petitioner's argument that the trial court was without jurisdiction to forfeit the Scranton road property because it was not identified in the indictment or bill of particulars was "ill-founded" and that the "trial court

had properly forfeited the entire property." *West*, 2013-Ohio-4185 at ¶¶11-12 . As the state appellate court concluded the underlying arguments lacked merit, West would be unable to demonstrate that there was a reasonable probability that, but for appellate counsel's unprofessional errors, the result of the appeal would have been different. Furthermore, as explained below, a challenge to a forfeiture does not provide a basis for habeas relief because it fails to impact the conviction or confinement.

Therefore, the Court recommends that the ineffective assistance of appellate counsel argument raised in ground four be dismissed.

**C.   Ground Five: Forfeiture of Property**

In his fifth ground for relief, Petitioner contends that the forfeiture of his real property was in error because the value of the property was disproportionate to the severity of the offenses of which he was convicted.  (Doc. No. 1 at pp. 47-57.)  He further argues that the trial court erred by forfeiting property that was not listed in the bill of particulars, the indictment, or rendered by a jury finding.  (*Id.*)  The Respondent argues that the state court's determination was objectively reasonable and not contrary to clearly established federal precedent.  (Doc. No. 50 at pp. 49-55.)  Respondent further contends that the forfeiture did not result in a Due Process Clause violation, which prohibits the taking of property without due process of law.  (*Id.* at pp. 54-55.)

Petitioner's claim in ground five, as well as the previously discussed claim in ground four, fail to present cognizable claims on federal habeas corpus review. Pursuant to 28 U.S.C. § 2254(a), "a district court shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State

28

court *only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States*." (Emphasis added).  Petitioner's allegation that his property was improperly forfeited, as well as his concomitant argument that appellate counsel was ineffective for failing to raise specific challenges on appeal to the forfeiture, are wholly irrelevant to the issue of whether "he is in custody in violation of the Constitution or laws or treaties of the United States."  In other words, even if the Court were to agree for the sake of argument that forfeiture of his property was improper under either state or federal law, such a determination would have no impact on his conviction, his confinement to prison, or the length of his confinement.  Therefore, Petitioner is requesting relief that this Court cannot grant on habeas review.

Many courts have rejected arguments similar to the one Petitioner is making here.  In *Johnson v. Turner*, the Court found that a petitioner's § 2254 challenge to the forfeiture of his assets during a criminal proceeding was not cognizable despite petitioner's attempt to frame the issue as a due process violation.  2015 WL 3967673 at *15 (N.D. Ohio June 30, 2015) (Pearson, J.) (*citing Smith v. White*, 2012 WL 3961233, at *18 (W.D. Ky. Aug. 7, 2012), *report and recommendation adopted*, 2012 WL 3947609 (W.D. Ky. Sept. 10, 2012) ([§ 2254] exists to permit state prisoners to challenge the constitutionality of their incarceration under the federal Constitution, laws or treaties of the United States.  It does not exist, and is not an appropriate basis, for a state prisoner to challenge the forfeiture of his or her property pursuant to state law.")); *Anaya v. Smith*, 2013 U.S. Dist. LEXIS 184311 at n. 7 (N.D. Ohio Feb. 5, 2013) ("Anaya appears to challenge the accuracy of the seizure of his property by the State.... Such a

29

claim is not cognizable on federal habeas review.") (Burke, M.J.), *adopted by* 2014 U.S. Dist. LEXIS 10258 (N.D. Ohio Jan. 28, 2014) (Lioi, J.); *Johnson v. Money*, 2007 WL 593553, at *14 (N.D. Ohio Feb. 21, 2007) ("[I]ssue of forfeiture ... is irrelevant to the issue of whether Johnson is in custody in violation of the Constitution."); *Tharpe v. Quarterman*, 2007 WL 2491855, at *1 (N.D. Tex. Sept. 5, 2007) ("A § 2254 petition may not be used as a vehicle for challenging a civil forfeiture judgment or decree entered by a state court."); *accord Pennsylvania v. Sixty Eight Thousand Nine Hundred Fifty Dollars in U.S. Currency*, 2014 WL 2605426 at *3 (W.D. Pa. June 10, 2014) ("[A] person may not utilize a Section 2254 petition to challenge a judgment of forfeiture."); *Ozoroski v. Klem*, 2004 WL 1446046 at n. 16 (E.D. Pa. June 28, 2004) (noting that "the accuracy of the forfeiture proceedings falls beyond this Court's province on habeas corpus review"); *cf. United States v. Ramsey*, 106 F.3d 404 (7th Cir. 1997) ("We previously have held that neither 28 U.S.C. § 2254 nor § 2255 authorizes a federal court to grant habeas corpus relief from monetary penalties in the form of fines.... We see no reason that the result should differ in cases in which the petitioner seeks relief from monetary penalties in the form of forfeiture of property, rather than in the form of fines.") (*citing United States v. Keane*, 852 F.2d 199 (7th Cir.1988), *cert. denied*, 490 U.S. 1084 (1989) (habeas corpus relief not available under § 2255 for remuneration of fines); *Hanson v. Circuit Court*, 591 F.2d 404, 407 (7th Cir.), *cert. denied*, 444 U.S. 907 (1979) (habeas corpus relief not available under § 2254 for remuneration of fines)); *accord Aswege v. United States*, 2007 WL 487002, at *2 (C.D. Ill. Feb. 9, 2007); *United States v. Golden*, 2005 WL 3434004 at *5 (E.D. Pa. Dec. 12, 2005) ("This Court

lacks jurisdiction to hear a challenge under § 2255 to the forfeiture order because forfeiture is not a sufficient restraint on liberty to satisfy the "in custody" requirement for habeas corpus relief.")

Although West attempts to frame ground five as a due process violation, he is simply challenging the forfeiture of his assets, which is not a challenge to the legality of his custody under the federal Constitution and, therefore, is not cognizable.

Therefore, the Court recommends that the forfeiture arguments raised in ground five be dismissed.

**D.  Ground Six: Denial of Motion for a New Trial**

In his final ground for relief, Petitioner avers that in June of 2014, he discovered new, exculpatory evidence.  (Doc. No. 40.)  Petitioner's argument, however, fails to identify any new, exculpatory evidence.  (*Id*.)  Instead, Petitioner alleges that another individual, Adam Flanik, was also a marijuana cultivator and was responsible for the marijuana grown on his property.  (Doc. Nos. 62 at pp. 131-173.)  During trial, police detective Joseph Bovenzi, on September 15, 2011, testified that Petitioner had given him the name of Adam Flanik, that he investigated Flanik, and that "[n]othing we found led us to believe that he was involved in this."  (Doc. No. 50-5, Tr. 529, 578-79.)  As best as this Court can understand West's argument, he appears to believe that Detective Bonvenzi committed perjury on the witness stand and that the police and prosecution knew Flanik was a known marijuana grower due to Flanik's subsequent conviction in 2012 of a drug offense.  (Doc. No. 62 at p. 134.)

On habeas review, a district court has jurisdiction over Petitioner's claims only if the petition mounts a challenge to the legality of his custody based on a "violation of the

Constitution or law or treaties of the United States." 28 U.S.C. § 2254.  A writ of

habeas corpus "is not available to remedy errors of only state law." _Smith v. Morgan,_

_371 F. App'x 575, 582 (6th Cir. 2010_); _see also Norris v. Schotten, 146 F.3d 314, 328_

_(6th Cir. 1998_) ("[a] claim based solely on an error of state law is not redressable

through the federal habeas process.") (citing _Estelle v. McGuire, 502 U.S. 62, 67-68,_

_(1991)_).  Violations of state law are insufficient to justify habeas relief.  _See, e.g, Wilson_

_v. Corcoran, 562 U.S. 1, 5 (2010_).

The Sixth Circuit, when addressing a state court's unexplained denial of a motion

for new trial under Michigan law, observed that "[a]ssuming that there is some sort of

liberty interest in receiving an explanation for the denial of a motion for new trial created

by [Michigan] Rule 6.431(B), arbitrary denial of that right would constitute denial of

procedural due process cognizable in federal habeas corpus."  _Cobble v. Smith, 154_

_Fed. App'x 447, 453-454 (6th Cir. 2005_) (_citing Norris, 146 F.3d at 329_).  Nevertheless,

the _Cobble_ decision explained that, as in _Norris,_ "any insufficiency in procedural due

process was cured through the appellate review process that was available to [the

petitioner] and which [the petitioner] took advantage of." _Id_.  ("[E]ven if there were

some arguable due process violation, the evidence against Cobble means that the

violation was harmless, caused no prejudice to Cobble, and does not support habeas

relief."); _cf. Pettway v. Hooks, 2015 U.S. Dist. LEXIS 175112 (N.D. Ohio Sept. 30,_

_2015_) (finding that a state court's failure to grant a Petitioner a hearing on a motion for

new trial, which the Petitioner characterized as a violation of his due process rights, was

a non-cognizable claim as it does not dispute his underlying conviction or detention)

(Knepp, M.J.), *adopted by* 2016 U.S. Dist. LEXIS 7211 (N.D. Ohio Jan. 21, 2016)

(Adams, J.); *Bolan v. LaRose*, 2014 U.S. Dist. LEXIS 140565 (N.D. Ohio Aug. 27,

2014) ("[T]o the extent Bolan is challenging the denial of his motion for new trial without

a hearing on state law grounds, such a claim is not cognizable on federal habeas

review.") (White, M.J.), *adopted by* 2014 U.S. Dist. LEXIS 139689 (N.D. Ohio Sept. 30,

2014) (Wells, J.)

To the extent West is claiming a mere violation of state law rules applicable to

motions for a new trial, such a claim is not cognizable.  However, West also argues the

trial court erroneously denied his motion for a new trial because there was a *Brady*[14]

violation and that his so-called new evidence allegedly shows the State relied on the

perjured testimony of police officers in violation of *Napue v. Illinois*, 360 U.S. 264

(1959) ("a conviction obtained through use of false evidence, known to be such by

representatives of the State, must fall under the Fourteenth Amendment") (Doc. No.

40.)

In the case at bar, the state appellate court addressed West's appeal from the

denial of his motion for a new trial as follows:

> [*P10]  West argues that there was a violation of *Brady v. Maryland*, 373
> U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and that the trial court
> erred in denying his motion for a new trial.  Pursuant to *Brady*, the
> prosecutor is required to disclose exculpatory and impeachment evidence
> that is material to guilt.  *Brady* at 87.  Evidence favorable to the defendant
> is deemed material only if there is a reasonable probability that, had the
> evidence been disclosed to the defense, the result of the proceeding

---

14 *Brady v. Maryland*, 373 U.S. 83, 87 (1963) (holding that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.")

would have been different.  *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985).  A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.  *Bagley* at 669; *see also State v. Johnston*, 39 Ohio St.3d 48, 529 N.E.2d 898 (1988), paragraph five of the syllabus.  The Supreme Court of Ohio cautioned that in order to find the undisclosed evidence material, the omission must "reflect our overriding concern in the justice of the finding of guilty," which means "the omission must be evaluated in the context of the entire record," and, if "there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial."  *State v. Jackson*, 57 Ohio St.3d 29, 34, 565 N.E.2d 549 (1991), quoting *United States v. Agurs*, 427 U.S. 97, 112-113, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976).

[*P11]  West alleges that the lead detective on the case, Cleveland police Detective Joseph Bovenzi lied at trial when he testified that the police investigated Adam Flanik pursuant to West's allegations and "[n]othing we found led us to believe that he was involved in this."  West takes issue with Bovenzi's testimony that "we found nothing to indicate that [Flanik] was involved in this crime, or any other crime, to sum it up."

[*P12]  West argues that an affidavit by special agent in charge Jeffrey Capretto of the Westshore Enforcement Bureau establishes that Detective Bovenzi and Cleveland police Detective Scott Moran lied at West's trial.  Capretto's affidavit, dated February 25, 2012 states that Capretto was informed by Detective Moran in March 2011 that a source provided information that Flanik was growing marijuana in his residence in Bay Village.  A trash pull from Flanik's residence revealed an empty Folger's coffee can containing marijuana residue.  In January 2012 an anonymous complaint received by Capretto alleged that marijuana was being grown at Flanik's residence.

[*P13]  Subsequent investigation led Capretto to seek a warrant for the search of Flanik's residence that was executed on February 28, 2012.  West attached to his motion the docket in CR-12-563216-A wherein Adam Flanik plead guilty to illegal manufacture or cultivation of marijuana.  The date of the offense listed on the docket was February 28, 2012.

[*P14]  We cannot say that the evidence presented by West would have been material to his guilt or innocence in this case.  To begin, the most glaring problem with West's motion is that none of the evidence offered by West connects Flanik in any way to West's November 5, 2010 offenses at the warehouse at 2341 Scranton Road.  Although Flanik was convicted of a separate unrelated drug offense in 2012, there is no indication that Detectives Bovenzi and Moran lied at trial regarding their fruitless

34

investigation into Flanik's involvement in West's case during 2010. West focuses on the fact that Detective Moran testified at West's trial that the name Flanik was not familiar to him. However, there is nothing in the record to suggest that at the time of West's offense in November 2010, when he provided the name of Adam Flanik to Moran, that Moran was familiar with Flanik. Thus, West has not established that Moran was untruthful in his testimony. At best, the record indicates that Detective Moran was informed by an unnamed source in March 2011 that Flanik was growing marijuana in his residence in Bay Village. Without any temporal or physical connection to West's November 2010 offenses, this information is irrelevant to this case.

[*P15] In this instance, the alleged newly discovered evidence cannot be said to be material to West's guilt or innocence. Therefore, the trial court was justified in summarily denying West's motions for a new trial. *State v. Alexander*, 11th Dist. Trumbull No. 2011-T-0120, 2012-Ohio-4468.

*West,* 2015-Ohio-3354 at ¶¶10-15.

The Court finds nothing unreasonable about the state appellate court's application of the facts to the law. The state appellate court reasonably determined that the subsequent, unrelated investigation and conviction of Flanik simply did not constitute *Brady* material. Furthermore, while the state appellate court did not expressly reference the *Napue* decision, it clearly addressed the issue of false testimony and found that "there is no indication that Detectives Bovenzi and Moran lied at trial regarding their fruitless investigation into Flanik's involvement in West's case during 2010." *West,* 2015-Ohio-3354 at ¶14. There is nothing unreasonable about this determination. West does not provide any evidence demonstrating that the testimony was false, only conjecture.[15]

---

[15] West also avers that Flanik should have been arrested and subpoenaed for trial so he could be questioned under oath and further states that the detectives should have been questioned at trial as to why the detectives did not perform a utilities check of Flanik. (Doc. No. 62 at p. 134, 136.) Such allegations do not support claims of a *Brady* violation or perjured testimony, but rather appear to take issue with trial counsel's decisions as to the witnesses to

Petitioner's final ground for relief is without merit.

## VI. Conclusion.

For all the reasons set forth above, the petition should be DENIED.


Date: June 15, 2016                          /s/ Nancy A. Vecchiarelli
                                             United States Magistrate Judge


## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111.**

---

be called at trial.  As such information, as noted by the appellate court, is irrelevant and immaterial to West's guilt or innocence, these allegations could not support a claim of ineffective counsel as West could not show prejudice under the *Strickland* standard.