# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| TIMOTHY WEST, | ) | CASE NO. 1:15-cv-203 |
| | ) | |
| PETITIONER, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | **MEMORANDUM OPINION** |
| WARDEN BRADSHAW, | ) | |
| | ) | |
| RESPONDENT. | ) | |

Before the Court is the Report and Recommendation of Magistrate Judge Nancy A. Vecchiarelli, recommending denial of this petition for writ of habeas corpus filed under 28 U.S.C. § 2254. (Doc. No. 64 ["R&R"].) After requesting and receiving two extensions of time, petitioner filed objections. (Doc. No. 68 ["Obj."].) Respondent filed a response to petitioner's objections. (Doc. No. 69 ["Resp."].) Pursuant to Fed. R. Civ. P. 72(b)(3), the Court has conducted its *de novo* review of any matter properly raised in the objections. For the reasons discussed below, petitioner's objections are overruled and the R&R is accepted.

## I. BACKGROUND

The record relating to this petition is somewhat complicated. It consists of the following documents: Petition (Doc. No. 1 ["Pet."]); Supplement to Petition (Doc. No. 40 ["Pet. Supp.",] styled as a motion to amend[1]); Return of Writ (Doc. No. 50 ["Return"]); Supplemental Records re: New Trial (Doc. No. 58-1 ["Return Supp."]); Traverse (Doc. No. 62 ["Traverse"]); and Reply (Doc. No. 63 ["Reply"]).[2]

---

[1] This motion was granted by order dated January 29, 2016. (Doc. No. 47.)

[2] During the time the petition was referred for an R&R, petitioner filed several motions which were ably resolved by the magistrate judge. Even since the R&R was filed, fully at issue, and under advisement, petitioner has persisted in filing motions. First, he filed a motion to stay any ruling on the R&R to permit him an opportunity to file a further

On March 29, 2011, petitioner was indicted by a grand jury on one count of illegal manufacture of drugs or cultivation of marijuana (O.R.C. § 2925.04(A)); one count of trafficking (O.R.C. § 2925.03(A)(2)); one count of drug possession (O.R.C. § 2925.11(A)); and one count of possessing criminal tools (O.R.C. § 2923.24(A)). All charges carried numerous forfeiture specifications. (Return at 875-83[3] (Ex. 1).)

Represented by counsel, petitioner entered a plea of not guilty. (*Id.* at 884 (Ex. 2).) On September 11, 2011, petitioner filed a motion seeking to be tried separately from his brother, Todd West, who had also been indicted for the same crimes. (*Id.* at 889-95 (Ex. 4).) During a pre-trial hearing on September 12, 2011, with petitioner present, petitioner's counsel, Mr. DeFranco,

---

response supplementing his objections and answering respondent's arguments. (Doc. No. 70.) This motion was denied in an order stating: "There is no basis in the civil rules for a response to a response and, where the initial objections were 166 pages long, the Court is hard pressed to imagine what could still be said." (Doc. No. 71 at 3263.) The Court further ordered that, unless it found need for additional briefing, "the briefing related to the R&R is complete." (*Id.*)

Nonetheless, two months later, in November 2016, petitioner filed three more motions. The second and third (Doc. Nos. 73 and 74 (both seeking leave to supplement) are ruled upon herein. The first (Doc. No. 72), asked for an order directing a judge of the Court of Common Pleas to assist petitioner to expand the record. By order dated November 16, 2016, that motion was denied and the Court advised petitioner that "the R&R and his objections [are] under advisement and [petitioner] is not free to endlessly add to the record. Therefore, absent **prior** leave of Court, and with the understanding that the Court has yet to decide whether to grant these most recent motions to supplement, petitioner shall not file any additional documents in this case. All documents filed without leave after the date of this order shall be stricken from the record." (Doc. No. 75 at 3278-79 (bolding in original).)

One month later, in December 2016, petitioner filed Doc. No. 79 (for leave to further reply to respondent's opposition to Doc. Nos. 73 and 74); this motion is ruled upon herein.

In January 2017, without leave, petitioner filed an "emergency" motion to stop his transfer to another prison (Doc. No. 80); this was denied. (Doc. No. 82.) A few days after the emergency motion, petitioner filed Doc. No. 83 (for leave to expand the record), which remains pending and under advisement.

In February 2017, without leave, petitioner attempted to file a 19-page motion to disqualify the Court, arguing generally that this Court was acting too slowly on his habeas petition (despite his indiscriminate filings that have wasted judicial resources while the Court has the R&R under advisement), was not acting impartially, and was contributing to the denial of petitioner's constitutional rights. On March 13, 2017, the Court issued an order, with the attempted filing attached as a "received" document (*see* Doc. No. 87-1), noting petitioner's persistence in filing documents without leave and in "tak[ing] advantage of the Court's indulgence." (Doc. No. 87 at 3324.) Observing that matters of docket control are within its discretion, the Court ruled that "[i]n order to effect the orderly administration of this case, the Court must enforce its prior order prohibiting the filing of additional documents without leave of Court." (*Id.* at 3326.) The clerk was directed "to return to petitioner any document received from him for filing in this case as of the date of this Order." (*Id.*)

[3] All page number references are to the page identification number generated by the Court's electronic docketing system.

represented to the Court that he had "spoke[n] with Mr. Gibbons [Todd West's attorney], spoken to my client, and it would be our position to withdraw that motion at this time." (*Id.* at 1663 (Tr. Vol 1).)

Petitioner had been arrested on November 5, 2010, along with his brother, Todd West, at 2341 Scranton Road in Cleveland, Ohio. Search warrants had been previously obtained to permit thermal imaging "fly-overs" of that location, as well as the homes of petitioner and of his brother (both in Westlake, Ohio); warrants were later obtained to search all of these premises. On the day of the arrest, Todd West allegedly made certain statements to the police. On September 12, 2011, Todd West, also represented by counsel (Mr. Gibbons), filed a notice to suppress any evidence obtained from both the thermal imaging search warrants and the premises search warrants, as well as his statements, which he alleged violated the Fifth Amendment. (*Id.* at 885 (Ex. 3).) At the pre-trial hearing on September 12, 2011, petitioner's counsel indicated petitioner's desire to join that motion to suppress. (*Id.* at 1666 (Tr. Vol. 1).) Following a hearing on the motion to suppress on September 13, 2011, the trial court denied the motion in its entirety. (*Id.* at 1810-37; 1850.)

On September 16, 2011, a jury found petitioner guilty on all charges. (*Id.* at 897 (Ex. 6).) After the trial court merged the trafficking and drug possession convictions and the State elected sentencing on the trafficking conviction, the trial court sentenced petitioner to a mandatory eight (8) years in prison for the illegal drug manufacture/cultivation conviction, a mandatory consecutive eight (8) years for the trafficking conviction, and twelve (12) concurrent months for the possession of criminal tools conviction, resulting in an aggregate sixteen (16) year sentence. (*Id.*)

Following a forfeiture hearing (*see id.* at 2530-2610 (Tr. Vol. 5)), on January 13, 2012, the trial court issued a final order of sentencing and forfeiture, including a ruling regarding claims of

interest in the properties filed by third parties (rejecting that of Donnalee West and accepting that of Nicholas Kulon).[4] (*Id*. at 913-15 (Ex. 12).)

Petitioner filed a direct appeal.[5] (*Id*. at 925 (Ex. 18).) On January 17, 2013, the Eighth District Court of Appeals affirmed in part, but reversed the trial court judgment "as to its forfeiture order of the $1,313 seized from Timothy's West [sic] Hedgewood residence . . . [and] as to its sentence on both the trafficking in drugs and cultivation or manufacture convictions, and . . . remanded [the case] for merger of those counts and the State's election of which count to proceed with on resentencing." (*Id*. at 1054 (Ex. 29).) Petitioner appealed to the Ohio Supreme Court.[6] On May 8, 2013, the court declined jurisdiction. (*Id*. at 1070 (Ex. 33); 1110 (Ex. 35).)

---

[4] The forfeited property on Scranton Road was ordered transferred to Kulon, whom the trial court found to be a *bona fide* purchaser. (*Id*. at 915 (Ex. 12).)

[5] Represented by new counsel, petitioner asserted seven assignments of error:

1. The introduction of numerous statements of the co-defendant deprived the appellant his right to Confrontation and deprived him of his Due Process Right to a fair trial.

2. The trial court erred by failing to sever the defendants for trial.

3. The trial court erred by failing to find the convictions of cultivation and trafficking in drugs to constitute allied offenses pursuant to Ohio Revised Code § 2941.25.

4. The trial court abused its discretion by sentencing the appellant to consecutive sentences without ordering the preparation of and considering a presentence report.

5. The multiple failures of defense counsel denied the appellant his right to the effective assistance of trial counsel.

6. The trial court erred when it ordered the forfeiture of cash and an automobile because the evidence failed to establish that the cash was associated with drug trafficking activities.

7. The trial court erred when it ordered the forfeiture of all property located at 2341 Scranton in Cleveland, Ohio.

(*Id*. at 935 (Ex. 22); 1021 (Ex. 27).)

[6] Before the Ohio Supreme Court, petitioner raised five propositions of law:

I. The introduction of numerous statements of the co-defendant deprived the appellant his right to confrontation and deprived him of his due process right to a fair trial.

II. The trial court erred by failing to sever the defendants for trial.

III. The trial court abused its discretion by sentencing the appellant to consecutive sentences without ordering the preparation of and considering a presentence report.

On April 11, 2013, petitioner filed an application to reopen his appeal under Ohio App. R. 26(B), claiming that "appellate counsel's inadequate performance compromised the appeal." (*Id.* at 1208 (Ex. 51).) He raised several errors by his appellate counsel.[7] On September 25, 2013, the court of appeals denied the application to reopen. The court provided a reasoned opinion wherein it addressed the claim of ineffective assistance of counsel. (*Id.* at 1229-43 (Ex. 53).) The Ohio Supreme Court subsequently declined jurisdiction. (*Id.* at 1344 (Ex. 61).)

Even before filing his Rule 26(B) application to reopen, on May 3, 2012, petitioner filed a *pro se* petition to vacate or set aside judgment of conviction or sentence, raising one claim of ineffective assistance of trial counsel. (*Id.* at 1111 (Ex. 36).) The trial court, after setting forth

---

IV.      The multiple failures of defense counsel denied the appellant his right to the effective assistance of counsel.

V.       The trial court erred when it ordered the forfeiture of all property located at 2341 Scranton in Cleveland, Ohio.

(*Id.* at 1073 (Ex 34).)

[7] Specifically, petitioner assigned the following errors:

1.       The trial court erred when it held the forfeiture hearing without jurisdiction since an appeal was pending when the hearing was held to dispose the property on Scranton Ave.

2.       The trial court erred when it forfeited property owned by the appellant that is not listed in the bill of particulars, and indictment.

3.       The appellant was denied his due process right to a fair trial when the prosecution failed to disclose evidence favorable to an accused upon request.

4.       The trial court erred, violating the appellant's Fourth Amendment right to suppress evidence and conduct a hearing, especially the thermal imaging flyovers and the actual searches since the warrants and evidentiary issues dehor the record.

5.       Trial court erred or abused its discretion when it denied the appellant's motion to return property from his residence.

6.       Trial counsel was ineffective when he failed to present an affidavit of indigence prior to sentencing to waive the fine, or, in the alternative, impose a $15,000 fine when both counts are allied offenses and $7,500 is the maximum amount allowed.

(*Id.* Ex. 51 (passim) (additional capitalization omitted).) The Court notes that page 9 of the application to reopen is missing. There was apparently a seventh assignment of error relating to the sufficiency of the evidence to support the convictions for cultivation and trafficking. (*See id.* at 1243 (Ex. 53).)

findings of fact and conclusions of law, denied the petition without a hearing on June 29, 2012 (*id.* at 1125 (Ex. 39)), and petitioner's appeal was unsuccessful (*id*. at 1162 (Ex. 45)).

Petitioner then attempted to "amend" his denied petition to vacate or set aside judgment of conviction or sentence, raising the very same claim as in the original petition. (*Id*. at 1171 (Ex 46).) This did not succeed (*see id.* at 1207 (Ex. 50)), and the record reflects no appeal from this denial.

Over two years later, on October 23, 2014, petitioner filed a *pro se* motion for leave to file a delayed motion for a new trial. (*Id.* at 1409 (Ex. 71).)[8] The motion was denied by journal entry dated January 15, 2015. (*Id.* at 1461 (Ex. 73).) In the meantime, on December 29, 2014, petitioner filed a second, lengthier motion for leave to file a delayed motion for a new trial, raising the same three arguments. (*Id*. at 1462 (Ex. 74).) That was denied by journal entry dated January 23, 2015. (*Id.* at 1512 (Ex. 75).) Petitioner appealed both denials, arguing abuse of discretion on the part of the trial court. (*Id.* at 1520 (Ex. 77).) The appeals were consolidated on petitioner's motion (*id*. at 1529 (Ex. 78)), and the court of appeals found that the trial court was justified in summarily denying the motions for leave. (*Id.* at 1607 (Ex. 83).) On December 2, 2015, the Ohio Supreme Court denied petitioner's attempt to appeal. (*Id*. at 1648 (Ex. 86).)

While these proceedings were going forward, on July 24, 2014, the trial court conducted a resentencing hearing pursuant to the remand order. (*Id.* at 2611 (Tr. Vol. 6).) Petitioner was represented by counsel at the hearing. The state elected to have petitioner sentenced on the

---

[8] Petitioner raised three arguments in support of his motion:

> I.      Petitioner was unavoidably prevented from discovering the new evidence within 120 days of the jury's verdict in this case.

> II.     Petitioner's delay was caused by prosecutor misconduct where the prosecutor and/or the prosecutor's witness, intentionally withheld the exculpatory evidence.

> III.    Failure of the prosecutor to correct false testimony of the detectives violates *Napue v. Illinois*.

(*Id.* Ex. 71 (passim).)

trafficking conviction. (*Id*. at 2615-16.) The trial court imposed a mandatory eight-year sentence on that conviction, plus a twelve-month concurrent sentence for possession of criminal tools. (*Id*. 1345 (Ex. 62).) As the appellate court had also reversed a $1,313 forfeiture, that amount was credited toward his mandatory $7,500 fine. (*Id*.) Represented by counsel, petitioner filed a motion for leave to file a delayed appeal to challenge his mandatory fine. (*Id*. at 1352 (Ex. 64).) The appellate court reversed and remanded for the trial court to consider petitioner's claim of indigency. (*Id*. at 1401 (Ex. 70).) On remand, and after a hearing, the trial court waived the mandatory fine. (*Id*. at 1649 (Ex. 87).)

The instant *pro se* petition, as amended with leave, raises six grounds for relief, as summarized in the R&R:

> **Ground One**: Ineffective assistance of trial counsel in violation of the 5th, 6th, and 14th Amendment's [sic] to U.S. Constitution.
>
> ***Supporting facts***: Trial counsel failed to request separate trials, failed to object to state's introduction of co-defendant's statements made to police, and counsel's erroneous objection to prosecutor's proposed jury instructions to correct error.
>
> **Ground Two**: Ineffective assistance of appellate counsel in violation of the 4th, 5th, 6th, and 14th Amendment's [sic] to U.S. Constitution.
>
> ***Supporting facts***: Appellate counsel failed to raise issues on direct appeal, that the state had violated *Brady*; failed to raise issues regarding the trial's abuse of discretion when denying the motion to suppress without ordering a hearing, and failing to issue any findings of fact.
>
> **Ground Three**: Ineffective assistance of appellate counsel in violation of the 4th, 5th, 6th, and 14th Amendment's [sic] to U.S. Constitution.
>
> ***Supporting facts***: Appellate counsel failed to raise an issue on direct appeal, that the state's evidence was insufficient to sustain a conviction for cultivation of marijuana and drug trafficking.
>
> **Ground Four**: Ineffective assistance of appellate counsel in violation of the 4th, 5th, 6th, and 14th Amendment's [sic] to U.S. Constitution.

*Supporting facts*: Appellate counsel failed to raise an issue that, the trial court erred in it's [sic] forfeiture proceedings when forfeiting property owned by the petitioner that was not listed in the bill of particular's [sic], indictment, or rendered by a jury finding.

**Ground Five**: The trial court erred in ordering the forfeiture of the real property known as Permanent Parcel No: 004-10-005 and 004-10-006 in Cleveland, Ohio and erred by ordering the forfeiture of property that the value was disproportional to the severity of the offense.

*Supporting facts*: The forfeiture was obtained when the trial court violated the petitioner's 14th Amendment right to due process triggering violation of petitioner's 4th, 5th, 6th, 8th, and 14th Amendment's [sic] right to the United States Constitution.

**Ground Six**: The defendant was denied his fourteenth amendment right to due process when the trial court abused its discretion when it denied the defendant's motion for leave to file a delayed motion for new trial.

*Supporting facts*: In June of 2014, the petitioner discovered new exculpatory evidence that is material to this case. This newly discovered evidence was and is overwhelming proof that the state prosecutor's [sic] and witnesses repeatedly committed prosecutor and witness misconduct against the petitioner before during and after his trial . . . .

(R&R at 3024-25.)

The R&R recommends denying the petition in its entirety.

# II. DISCUSSION

## A.    The Standard of Review

Under 28 U.S.C. § 636(b)(1)(C), "[a] judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Powell v. United States*, 37 F.3d 1499 (Table), 1994 WL 532926, at *1 (6th Cir. Sept. 30, 1994) ("Any report and recommendation by a magistrate judge that is dispositive of a claim or defense of a party shall be subject to de novo review by the district court in light of specific objections filed by any party."). "An 'objection' that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used in this context." *Aldrich v. Bock*, 327 F. Supp. 2d 743, 747 (E.D. Mich. 2004); *see also* Fed. R. Civ. P. 72(b)(3) ("[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to"); LR 72.3(b) (any objecting party shall file "written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections."). After review, the district judge "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

In conducting its *de novo* review in a habeas context, this Court must be mindful of the requirements of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), which provides in relevant part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim−

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102-03, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) (Stevens, J., concurring in judgment)).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams v. Taylor*, 529 U.S. 362, 412-13, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).

Four of petitioner's six grounds for relief challenge the effectiveness of the representation of his trial counsel and his appellate counsel. A criminal defendant has a constitutional right to the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 685-86, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). When an ineffectiveness claim is raised in a habeas petition, as opposed to on direct appeal,[9] the review is doubly deferential and "federal courts are to afford 'both the

---

[9] On *direct* review of an ineffectiveness claim the defendant must establish two elements. "First, the defendant must show that counsel's performance was deficient[,]" which requires a "showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S.

state court and the defense attorney the benefit of the doubt.'" *Woods v. Etherton*, ___ U.S. ___, 136 S. Ct. 1149, 1151, 194 L. Ed. 2d 333 (2016) (quoting *Burt v. Titlow*, 571 U.S. ___, ___, 134 S. Ct. 10, 13, 187 L. Ed. 2d 348 (2013)).

> The pivotal question [in the habeas context] is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

*Harrington*, 562 U.S. at 101 (quoting *Williams*, 529 U.S. at 410); *Cullen v. Pinholster*, 563 U.S. 170, 131 S. Ct. 1388, 179 L. Ed. 2d 557 (2011). Thus, to obtain habeas relief, the petitioner "must show that the state court's ruling on the [ineffectiveness] claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103.

## B.      Pending Motions Relating to the Petition

Before addressing petitioner's objections to the R&R, the Court will rule on four pending motions that relate to the petition and the record supporting it.

### 1.      Motions to Supplement (Doc. Nos. 73, 74) and to Reply (Doc. No. 79)

Petitioner has filed two motions to supplement the record with alleged supporting authority, specifically, *United States v. Brown*, 828 F.3d 375 (6th Cir. 2016) and *United States v. Harvey*,

---

at 687. "Second, the defendant must show that the deficient performance prejudiced the defense[,]" which requires a "showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. In other words, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id*. at 688. "Judicial scrutiny of counsel's performance must be highly deferential[ ] . . . [and] every effort [should] be made to eliminate the distorting effects of hindsight[.]" *Id*. at 689.

202 F. Supp. 3d 771 (E.D. Mich. 2016). Petitioner claims that both of these cases stand for the proposition that, because the state trial court held no hearing on his motion to suppress a search warrant due to alleged lack of probable cause to obtain the warrant, he is entitled to reversal of his two convictions.

Respondent has opposed both of these motions (Doc. Nos. 76, 77), and petitioner has filed a third motion seeking leave to file a reply to the opposition briefs.

The Court grants petitioner's motions to supplement (Doc. Nos. 73, 74), but denies the motion for leave to reply (Doc. No. 79). The Court further notes that the clerk filed the reply, rather than attaching it as an exhibit to the motion. Therefore, Doc. No. 78, styled as a reply, is stricken from the record.

Although the record is now supplemented with two additional cases, neither of them supports petitioner's argument because both are factually and legally distinguishable from the instant case.

*Brown* involved a direct appeal from a federal criminal prosecution where convictions were thrown out due to reversal of the denial of a motion to suppress a warrant; *Brown* did not involve a habeas petition challenging the constitutionality of a state conviction.

Similarly, *Harvey* was a ruling by another district court, in the course of a federal prosecution, granting a motion to suppress after finding that the warrant was not supported by probable cause.

This Court, sitting in habeas, is bound by *Stone v. Powell*, 428 U.S. 465, 494, 96 S. Ct. 3037, 49 L. Ed. 2d 1067 (1976), which bars any Fourth Amendment claim that has been fully and fairly litigated in state court. Here, suppression of the search warrant is just such a claim.

## 2.     Motion for Leave to Expand the Record (Doc. No. 83)

In his fourth pending motion, petitioner seeks leave to expand the record with the affidavit that supported the challenged search warrant. Respondent has opposed this motion (Doc. No. 84), arguing that petitioner failed to seek leave to file it, as directed by the Court's prior order limiting petitioner's ability to file. Without leave of Court, petitioner filed a reply (Doc. No. 86), which is stricken from the record.

The motion to expand the record (Doc. No. 83) is denied. Petitioner is essentially asking this Court to add to the habeas record a document that was not contained in the record before the state courts on direct or collateral review and then to use what he believes will be the content of that new record to "reverse" his convictions. This is not within the scope of habeas review.

## C.     De Novo Review

### 1.     Ground One – Ineffective Assistance of Trial Counsel

Petitioner claims here that his trial counsel was ineffective by: (1) failing to request separate trials to avoid jury consideration of alleged statements by petitioner's co-defendant to police; (2) failing to object to the State's introduction of these statements; and (3) objecting erroneously to the prosecutor's proposed jury instruction that these alleged statements could not be used against petitioner. (Pet. at 14.)

This same constitutional violation of ineffective assistance of trial counsel was presented on direct appeal in the state court as the fifth assignment of error (Return, Ex. 22 at 935),[10] where the court ruled:

---

[10] As the Ohio Supreme Court declined to accept jurisdiction, the court of appeals decision was the last reasoned state court decision. *Ylst v. Nunnemaker*, 501 U.S. 797, 803, 111 S. Ct. 2590, 115 L. Ed. 2d 706 (1991) ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the claim rest upon the same ground.")

## IV. Ineffective Assistance of Counsel

{¶ 23} In his fifth assignment of error, Timothy contends he was denied his right to effective assistance of counsel because (1) counsel failed to request separate trials or erred in withdrawing the request for separate trials, (2) failed to object to statements made by codefendant Todd, [and] (3) erred in objecting to the prosecutor's request for an instruction regarding Todd's statements . . . . We note that these arguments are the basis for other assigned errors raised by Timothy within the appeal and previously addressed in this opinion.

{¶ 24} To reverse a conviction for ineffective assistance of counsel, the defendant must prove "(1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome of the proceeding." *State v. Madrigal*, 87 Ohio St.3d 378, 388-389, 2000–Ohio–448, 721 N.E.2d 52, citing *Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

{¶ 25} As to the second element of the test, the defendant must establish "that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph three of the syllabus; *Strickland* at 686. In evaluating whether a petitioner has been denied effective assistance of counsel, the Ohio Supreme Court held that the test is "whether the accused, under all the circumstances, had a fair trial and substantial justice was done." *State v. Hester*, 45 Ohio St.2d 71, 341 N.E.2d 304 (1976), paragraph four of the syllabus.

{¶ 26} Having previously determined in his first assignment of error that Timothy's right to confrontation may have been violated but any violation was harmless, we necessarily find that he was not denied his right to effective assistance of counsel for failing to object to Todd's statements and for objecting to the trial court's limiting instruction regarding Todd's statements.[11]

{¶ 27} Timothy also argues that his counsel was ineffective for failing to request separate trials and for withdrawing the motion for separate trials. In his second assignment of error, we declined to address the issue of separate trials due to the invited error doctrine. As this court recognized,

> considering an ineffective assistance of counsel claim brought about as a result of invited error would necessarily vitiate our ruling on invited error. There is no point in having a stringent invited error doctrine only to allow it to be overcome by finding counsel ineffective for having invited the error. In any event, an invited error involves the exercise of trial strategy, and the courts have repeatedly held that an appellate court will not question matters of trial strategy.

---

[11] The appellate court, addressing petitioner's first assignment of error on direct appeal (relating to a violation of his right of confrontation due to the use of his co-defendant's statements against him) concluded that there was "sufficient admissible evidence . . . to render the extrajudicial statements made by [the co-defendant] harmless beyond a reasonable doubt." (Return, Ex. 29 at 1043.)

*State v. Doss*, 8th Dist. No. 84433, 2005–Ohio–775, ¶ 9, citing *State v. Mason*, 82 Ohio St.3d 144, 157, 1998–Ohio–370, 694 N.E.2d 932. Furthermore, this court must presume that a licensed attorney is competent and that the challenged action is the product of sound trial strategy and falls within the wide range of professional assistance. *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052, 80 L.Ed.2d 674. Courts must generally refrain from second-guessing trial counsel's strategy, even where that strategy is questionable, and appellate counsel claims that a different strategy would have been more effective. *State v. Jalowiec*, 91 Ohio St.3d 220, 237, 2001–Ohio–26, 744 N.E.2d 163.

\* \* \*

{¶ 29} Accordingly, Timothy's fifth assignment of error is overruled.

(*Id.*, Ex. 29 at 1046-48 (footnote 12 added).)

The issue before this habeas Court is whether fairminded jurists could disagree on the correctness of the state court's decision. The R&R addressed the three alleged failures by trial counsel as one, finding that "they all revolve around the same issue – the impact of the out-of-court statements made by co-defendant Todd West on [p]etitioner's trial." (R&R at 3029.) The R&R then relied upon *Bruton v. United States*, 391 U.S. 123, 126, 88 S. Ct. 1620, 20 L. Ed. 2d 476 (1968), as applied by *Stanford v. Parker*, 266 F.3d 442, 456 (6th Cir. 2001), to conclude that the state appellate court, after first correctly identifying *Strickland* as the standard by which counsel's performance is judged, reasonably applied clearly established federal law to overrule the claim of ineffective assistance of trial counsel.

By way of objection to the R&R's conclusion regarding ground one, petitioner largely repeats, practically word-for-word, the arguments made in his traverse. (*Compare* Obj. at 3055-92[12] and Traverse at 2784-92.) To that extent, he has not made a "proper" objection under the

---

[12] Occasionally, petitioner inserts "the Magistrate Judge" either along with or in place of "the state's attorney general," apparently attempting to appear that he is making a new, reasoned objection. (*See, e.g.*, Obj. at 3071, 3077.) This does not suffice.

controlling rules and statutes. The Court will not transform into "objections" identical arguments set forth in the traverse and already considered in the R&R.

Where petitioner does insert new arguments (*see* Obj. at 3066-67; 3078-92), he does not relate this new material to any error in the R&R. He merely disagrees with the R&R and either attempts to buttress his *original* arguments with new arguments and new record citations, or advances entirely *new* arguments and record citations that, although perhaps going to the merits of an underlying claim not before the Court, do not support the claim of ineffective assistance of trial counsel that *is* before the Court. For example, petitioner goes on at some length about alleged "proof the state prosecutor's [sic] and witnesses repeatedly committed prosecutor and witness misconduct by intentionally withholding material exculpatory evidence by suppressing it with intentional premeditated fictitious fabricated false perjured testimony under oath on the witness in the petitioner's trial." (*Id*. at 3078.) Read in context, this appears to be an attempt to implicate one Adam Flanik as the real guilty party, not petitioner (*see, e.g.*, *id.* at 3080), and to claim that investigators on his case withheld critical evidence about Flanik that would have strengthened his defense (*id.* at 3080-81.)

This lengthy material is completely unlinked to any error in the R&R and is only tangentially linked to the actual issue raised in ground one. Petitioner briefly attempts, somewhat in passing, to blame trial counsel for these "[s]trategic choices that [ ] actually imperil[ed] the defendant's case [and thus,] can not [sic] be considered 'sound.'" (*Id*. at 3082, citing *Wiggins v. Smith*, 539 U.S. 510, 527-28, 123 S. Ct. 2527, 156 L. Ed. 2d 471 (2003).)[13]

---

[13] Petitioner's specific page reference to *Wiggins* suggests an attempt to bring a completely new challenge to trial counsel's ineffectiveness based upon an alleged unreasonable pre-trial investigation into the facts. But, even if petitioner is now trying to argue that it was this alleged faulty investigation by counsel that led to strategic errors at trial, this particular claim has never been previously raised (not even in state court) and need not be considered by the Court at this juncture.

Petitioner asserts that "the state appellate court and the Magistrate Judge refuses [sic] to address the petitioner's argument that [Detective] Bovenzi's testimony was and is intentional premeditated fictitous [sic] fabricated false prejured [sic] testimony that was and is a total reckless disregared [sic] for the truth to withhold and suppress exculpatory evidence that is very favorable to the defense." (*Id.* at 3085.) Petitioner challenges the R&R's conclusion that he "does not provide any evidence demonstrating that the testimony was false." (*Id.*, citing R&R at 3047.) But petitioner's citation is to the R&R's discussion of ground *six*, relating to the trial court's denial of a new trial; it has no connection to ground *one*.

Petitioner also appears to argue that the R&R fails to apply the standard of *Brecht v. Abrahamson*, that relief may be granted on collateral review if a trial error "had substantial and injurious effect or influence in determining the jury's verdict." 507 U.S. 619, 637, 113 S. Ct. 1710, 123 L. Ed. 2d 353 (1993) (cited by Obj. at 3087). Petitioner argues that the R&R concedes that the trial court did not apply any of the three alternatives set forth in *Stanford*, *supra*, for protecting a defendant from a confessing co-defendant's harmful statements, but then proceeded to apply a harmless error test. (Obj. at 3086-87.) Petitioner is incorrect. The R&R properly applied the law. The ground being considered is whether trial counsel was ineffective for his alleged failures that led to a trial error. The R&R first correctly concludes that the state appellate court also correctly concluded that, although there may have been errors, "the evidence was sufficient beyond these [extrajudicial] statements to render them harmless." (R&R at 3031, quoting Return, Ex. 29 at 1042.) As a result, any failure by trial counsel was also harmless and immaterial.

Finally, petitioner challenges the R&R's conclusion, with respect to his claim of trial counsel ineffectiveness relating to the withdrawal of his motion for a separate trial, that petitioner had given "express consent." (Obj. at 3090, citing R&R at 3034-35.) Petitioner claims he never

gave his consent to withdraw the motion. But the record shows otherwise. Trial counsel withdrew the motion, during a pretrial hearing where petitioner was present. (*See* Return, Tr. [Vol 1.] at 1662-63.) Had petitioner not been in agreement with his counsel's statement to the trial court, he could have spoken; he did not, indicating his assent.

To the extent petitioner has raised "proper" objections as to ground one, the Court finds no merit in any of them. Petitioner has failed to establish that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103. Petitioner's objections with respect to ground one are overruled and the R&R's conclusions are accepted.

### 2.    Grounds Two and Three – Ineffective Assistance of Appellate Counsel

In these two grounds, petitioner asserts that his appellate counsel was ineffective for failing to raise the following on direct appeal: (1) a *Brady* violation[14] by the state; (2) the trial court's abuse of discretion in denying a motion to suppress without holding a hearing and without issuing findings of fact; and (3) that the state's evidence was insufficient to sustain his conviction for cultivation of marijuana and drug trafficking.[15] These issues were raised before the state appellate court in petitioner's Rule 26(B) application to reopen, where he argued:

> In direct appeal, appellate counsel failed to raise several winning issues. But for appellate counsel's unreasonable and unjustifiable errors, the appeal would have resulted in a different outcome. Moreover, there was no reasonable justification for counsel's ineffective performance and because there is no reasonable probability

---

[14] Under *Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), due process is violated where the prosecution suppresses requested exculpatory evidence that is material either to guilt or to punishment.

[15] In his objections, petitioner asserts that there was another aspect of this claim that the R&R fails to address, namely, that the "court of appeals violated [his constitutional rights] [w]hen they [sic] did not apply the proper time to file a delayed motion for new trial." (Obj. at 3093.) Even assuming this claim was raised and exhausted (and the citation to the record that petitioner provides does not establish that fact), petitioner utterly fails to show how an alleged error by the court of appeals in applying a time period to his *pro se* delayed motion for new trial would have anything to do with the alleged ineffectiveness of his appellate counsel. The Court need not consider this "additional" aspect of ground two.

that but for these errors, the outcome of his appeal would have been different and the Appellant was prejudiced mandating relief.

(Return, Ex. 51, at 1210, citing *Strickland*, 466 U.S. at 687.)

The state appellate court considering petitioner's application to reopen his appeal noted that, on direct appeal, petitioner's counsel had argued the following:

> (1) the violation of Timothy's Sixth Amendment right to confrontation by using Todd's [his co-defendant's] incriminating statements against Timothy; (2) the failure to try the West brothers separately; (3) the failure to merge the cultivation and trafficking charges as allied offenses, (4) imposing consecutive sentences; (5) ineffective assistance of trial counsel for failing to file meritorious motions, failing to object to improper testimony, argument, jury instructions, and sentences; (6) the improper forfeiture of the cash and automobile; and (7) the improper forfeiture of the entire Scranton Road property. This court ruled that the cultivation and trafficking counts were allied offenses. Thus, this court reversed the sentences on both counts and remanded for merger and resentencing with the state selecting on which count Timothy should be sentenced. The court also reversed the forfeiture of the $1,313 seized from Timothy's home. The court further held that the trial court did err in allowing Todd's incriminating statement to be used against Timothy, but such error was harmless because the rest of the admissible evidence proved Timothy's guilty beyond a reasonable doubt. This court overruled the other assignments of error. Timothy now submits that his appellate counsel was ineffective.

(*Id.*, Ex. 53, at 1233-34.)

The state appellate court cited the proper *Strickland* standard, and then applied that standard, noting that "it is all too tempting for a defendant to second-guess his lawyer after conviction and that it would be all too easy for a court, examining an unsuccessful defense in hindsight, to conclude that a particular act or omission was deficient." (*Id.* at 1235.) The court further noted that "the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" (*Id.*, quoting *Strickland*, 466 U.S. at 689.) Finally, the state appellate court reviewed the principles set forth in *Jones v. Barnes*, 463 U.S. 745, 751-52, 103 S. Ct. 3308, 77 L. Ed. 2d 987 (1983) for judging the strategies and

tactics of appellate counsel after-the-fact (*id*. at 1235-36), and emphasized the requirement that a petitioner alleging ineffective assistance of appellate counsel "must further establish prejudice: but for the unreasonable error there is a reasonable probability that the results of the proceeding would have been different." (*Id*. at 1236.)

In reviewing the state appellate court's decision with respect to grounds two and three, this Court applies the same habeas-*Strickland* standard that it applied for ground one, with the added recognition that appellate counsel has no duty to raise "every colorable issue" on direct appeal and, in fact, doing so "runs the risk of burying good arguments[.]" *Jones v. Barnes*, 463 U.S. at 753. Instead "[e]xperienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Id*. at 751-52.

The state appellate court's recitation, as noted by the R&R, "was neither contrary to nor an unreasonable application of clearly established federal law." (R&R at 3038.) Although petitioner goes on at some length in his objections regarding grounds two and three, the entire substance of his argument is aimed at the alleged underlying errors, not at explaining how his appellate counsel was ineffective or, even more importantly, how the R&R's analysis of the state court's decision is incorrect.

Petitioner seems particularly concerned about two alleged errors by appellate counsel that, in his view, constitute ineffectiveness: (1) not assigning as error the trial court's failure to hold a hearing and make findings of fact with respect to the motion to suppress, especially to the extent that the motion suggested *Brady* violations; and (2) not challenging on direct appeal the sufficiency of the evidence to sustain a conviction for cultivation of marijuana and drug trafficking.

As to the first concern, petitioner is insistent that officers had no probable cause to obtain a search warrant in the first place and, therefore, conducted an illegal search and seizure. But, again, this argument does not address ineffectiveness of appellate counsel. In fact, petitioner repeatedly raised lack of probable cause and illegal search/seizure in the state courts and they repeatedly rejected his challenge. It is not outside the bounds of reasonableness for appellate counsel to have determined that this would not be a strong argument to make on appeal. Even if that was a mistaken judgment on counsel's part, it did not necessarily constitute ineffective assistance and, under the doubly deferential standard of review, petitioner's objections do not establish otherwise. Furthermore, even if the Court were to accept that failure to raise this argument on appeal was professionally unreasonable, petitioner's objections fail to establish prejudice because, as pointed out by the state appellate court, "the evidence of the brothers' surreptitious movements and the strong smell of marijuana provided sufficient probable cause for the search." (Return at 1240.)

As to the second concern, the court of appeals ruled that, on direct appeal, it had "implicitly rejected this argument in addressing the admissibility of Todd's incriminating statements against Timothy[,]" and had "ruled that 'sufficient admissible evidence was present to render the extrajudicial statements made by Todd harmless beyond a reasonable doubt.'" (*Id.* at 1243, quoting Return, Ex. 29, at 1043.) In other words, the court of appeals effectively ruled that the issue now of concern to petitioner *was* considered on direct appeal and, therefore, appellate counsel cannot be faulted because no prejudice can be shown.

It is abundantly clear that petitioner disagrees with both the state appellate court and the R&R, but his disagreement is not enough to show constitutional error in the R&R. Petitioner makes bald assertions that, had the magistrate judge read petitioner's filings, in particular his traverse,

she would have learned that "[p]etitioner would have been successful in having his conviction reversed and not only would have been discharged he would of [sic] had his property returned to him." (Obj. at 3096.)[16] He argues that he was "convicted for something that [he] could not of [sic] possibly done." (*Id.* at 3133.) Unfortunately, petitioner's assertions and arguments do not address the narrow legal question of whether the state appellate court's decision was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103.

Petitioner's objections with respect to grounds two and three are overruled and the R&R's conclusions are accepted.

### 3.    Grounds Four and Five -- Forfeiture

In ground four, petitioner challenges the effectiveness of his appellate counsel due to his failure to raise on direct appeal that the trial court erred by forfeiting property owned by the petitioner that was not listed in the bill of particulars or indictment and was not based on a jury finding. In ground five, he directly challenges the state court's decision to forfeit two particular parcels of real estate. As properly noted by the R&R, neither of these claims is cognizable in habeas.

"Because a forfeiture proceeding is not a 'criminal prosecution' and is not attended by a risk of the loss of liberty, the courts have uniformly held there is no constitutional right to counsel in a forfeiture proceeding." *Brown v. Berghuis*, 638 F. Supp. 2d 795, 824 (E.D. Mich. 2009)

---

[16] Although petitioner's arguments are little more than rambling narrative sprinkled with record citations, a close reading reveals that his record citations and quotations are frequently incomplete and taken out of context so as to support whatever point he is now trying to make. But this abundance of information, much of it simply repetitive of his previous filings, does nothing to advance the issues and constitutional principles that are before the Court on habeas.

(citations omitted). Where there is no right to counsel, there can be no claim of ineffective assistance of counsel. *Id.* Therefore, ground four is not cognizable in habeas.

Even where a petitioner attempts to frame his challenge to the propriety of a forfeiture as a due process violation, such claim is not cognizable under § 2254 because it is "not a challenge to the legality of his custody under the federal Constitution, laws or treaties of the United States[.]" *Johnson v. Turner*, No. 1:13CV01173, 2015 WL 3967673, at *15 (N.D. Ohio June 30, 2015) (citations omitted).

Although petitioner again goes on at some length with respect to these grounds for relief (*see* Obj. at 3140-67), he fails to properly address the R&R's conclusion regarding cognizability or to point out any error in that conclusion. Understandably, since he is proceeding *pro se*, he seems to misunderstand the legal principle, arguing that, since, in his view, he was improperly convicted in the first place, his property should not have been forfeited. This misses the mark.

There being no proper objection with respect to grounds four and/or five, the R&R's conclusion is accepted.

### 4.    Ground Six – Denial of Motion for New Trial

In ground six, raised in a supplement to the petition, petitioner asserts that the trial court abused its discretion in denying his motion for a new trial. To the extent this ground challenges the state court's application of Ohio Crim. R. 33, applicable to motions for new trial, it is not cognizable in habeas, as properly pointed out by the R&R. (R&R at 3045.)

But petitioner also argues that he was entitled to a new trial because he presented evidence of a *Brady* violation and that newly-discovered evidence showed that the state relied on perjured testimony by a police investigator. "[A] conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment." *Napue v.*

*Illinois*, 360 U.S. 264, 269, 79 S. Ct. 1173, 3 L. Ed. 2d 1217 (1959) (citations omitted). Petitioner appealed the denial of his motion for new trial and the state appellate court addressed his sole assignment of error.

The essence of petitioner's argument, both in state court and here, is that Cleveland Police Detective Joseph Bovenzi lied at trial when he testified that the police found nothing to indicate that one Adam Flanik, who rented part of the Scranton Road building and had been investigated in connection with the marijuana growing operation there, was in any way involved. Apparently, subsequent to petitioner's conviction, Flanik was convicted on marijuana-related charges involving the growing of marijuana in his Bay Village, Ohio home. Petitioner argues that "[t]he detectives never told the jury [F]lanik is a marijuana grower who [was] currently growing and selling marijuana[.]" (Pet. Suppl. at 650.) According to petitioner, Detective Bovenzi "lied under oath . . . that Flanik was not involved in this crime or any other crime to sum it up." (*Id.*) Petitioner argues that there is a reasonable probability that, had "the suppressed exculpatory evidence been disclosed to the defense, the result of the proceeding would have been different." (*Id.*)

The state appellate court reviewed petitioner's submission and concluded:

> {¶10} West argues that there was a violation of *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), and that the trial court erred in denying his motion for a new trial. Pursuant to *Brady*, the prosecutor is required to disclose exculpatory and impeachment evidence that is material to guilt. *Brady* at 87. Evidence favorable to the defendant is deemed material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *United States v. Bagley*, 473 U.S. 667, 682, 105 S. Ct. 3375, 87 L. Ed. 2d 481 (1985). A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. *Bagley* at 669; *see also State v. Johnston*, 39 Ohio St.3d 48, 529 N.E.2d 898 (1988), paragraph five of the syllabus. The Supreme Court of Ohio cautioned that in order to find the undisclosed evidence material, the omission must "reflect our overriding concern in the justice of the finding of guilty," which means "the omission must be evaluated in the context of the entire record," and, if "there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no

justification for a new trial." *State v. Jackson*, 57 Ohio St.3d 29, 34, 565 N.E.2d 549 (1991), quoting *United States v. Agurs*, 427 U.S. 97, 112-113, 96 S. Ct. 2392, 49 L. Ed. 2d 342 (1976).

* * *

{¶14} We cannot say that the evidence presented by West would have been material to his guilt or innocence in this case. To begin, the most glaring problem with West's motion is that none of the evidence offered by West connects Flanik in any way to West's November 5, 2010 offenses at the warehouse at 2341 Scranton Road. Although Flanik was convicted of a separate unrelated drug offense in 2012, there is no indication that Detectives Bovenzi and Moran lied at trial regarding their fruitless investigation into Flanik's involvement in West's case during 2010. West focuses on the fact that Detective Moran testified at West's trial that the name Flanik was not familiar to him. However, there is nothing in the record to suggest that at the time of West's offense in November 2010, when he provided the name of Adam Flanik to Moran, that Moran was familiar with Flanik. Thus, West has not established that Moran was untruthful in his testimony. At best, the record indicates that Detective Moran was informed by an unnamed source in March 2011 that Flanik was growing marijuana in his residence in Bay Village. Without any temporal or physical connection to West's November 2010 offenses, this information is irrelevant to this case.

{¶15} In this instance, the alleged newly discovered evidence cannot be said to be material to West's guilt or innocence. Therefore, the trial court was justified in summarily denying West's motions for a new trial. *State v. Alexander*, 11th Dist. Trumbull No. 2011-T-0120, 2012-Ohio-4468.

(Return, Ex. 83, at 1613-16.)

The R&R concludes that there is "nothing unreasonable about the state appellate court's application of the facts to the law." (R&R at 3047.)

In his objections, petitioner adamantly repeats his assertions that, because Flanik was eventually convicted of growing marijuana, it clearly must have been false for the detectives to testify that he had no connection to the Scranton Road operation. Although it is not entirely clear (because petitioner asserts that he "never claimed it was because of Flanik's marijuana cultivation conviction" – a claim he has, in fact, repeated over and over), petitioner may be trying to suggest that, had the officers testified differently regarding Flanik, there may have been reasonable doubt,

and the failure of the prosecuting attorney to produce this evidence and to set the record straight at trial was intended to "mislead the petitioner and the jury." (Obj. at 3171.) Buried within his objections is petitioner's claim that "[t]hese Detectives knew if the [p]etitioner's jury knew about Flanik at least one of them might not of [sic] been brainwashed to believe ever-thing [sic] that detective's [sic] tell them to believe especial [sic] after they have been repeatedly caught lying under oath on the witness stand. This exculpatory material evidence that was illegally withheld [ ] if it was presented to the jury would have had more than a reasonable probability that, had the evidence been disclosed to the jury and the defense the result of the proceeding would have been different." (Obj. at 3205-06.)

Petitioner argues, but without cogent explanation, that all of this information relating to Flanik "was clearly favorable to the defense." (*Id.* at 3173.) He asserts: "Just because . . . Magistrate Judge did not read or compare petitioner's exhibits to lead detective's trial testimony, does not mean petitioner did not provide any evidence demonstrating that lead detective's trial testimony was false." (*Id.* at 3174.) At that point in his objections, petitioner simply cuts and pastes most of his argument (called "Brief in Support") from his supplemental petition, adding new material beginning at page 3185 of the objections. But even the new material is simply repetition of arguments already made and rejected.

Beginning at page 3187 of his objections, petitioner recites at some length, the legal principles that apply to the analysis, but, fatally, he never applies these legal principles to explain how the state appellate court (or, more notably, the R&R) was incorrect in its legal analysis and factual findings. He simply declares that "it is a crystal clear fact that the State appellate court's decision was based on an unreasonable application of well settled United States Supreme Court

precedent, and base [sic] on an unreasonable determination of the facts in light of the evidence submitted in the state court proceedings for purposes of 2254(d)(2)." (Obj. at 3203.)

The Court finds no proper objections with respect to ground six and, therefore, the R&R's conclusion is accepted.

### III. CONCLUSION

For the reasons discussed above, petitioner's objections to the R&R are all overruled and the R&R is accepted. The petition for writ of habeas corpus is denied and the case is dismissed. Further, the Court certifies that an appeal from this decision could not be taken in good faith and that there is no basis upon which to issue a certificate of appealability. 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

**IT IS SO ORDERED**.

Dated: June 7, 2017

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**